## Bell County v. Hugh Alexander and others.

A jury having been waived, and the case submitted to the court, a motion for a new trial is not necessary, to entitle the plaintiff to a revision of the judgment.

In the construction of a will, the intention of the testator is the primary object of inquiry; and the law will not suffer the intention to be defeated, merely because the testator has not clothed his ideas in technical language.

The statute, declaring that "any estate in lands, which shall hereafter be "granted, conveyed, or devised to one, although other words, heretofore "necessary at common law, to transfer an estate in fee simple, be not added, "shall be deemed a fee simple, if a less estate be not limited by express "words, or do not appear to have been granted, conveyed, or devised, by "construction or operation of law," sweeps away the established rules of construction, in respect to the quantity of interest conveyed by wills, &c.

By employing the words, "I wish the county in which I die and am buried, to "have and enjoy, for the benefit of public schools, two-thirds of the land in "the county I am buried in," in connection with the words, "my land," and "the land I own," used in the context, and other parts of the will, the testator meant to devise an estate in lands; and there being nothing in the will to indicate an intention to give a less estate, the devise must be held to pass an estate in fee.

The same effect would be given to this will, without the aid of the statute, by the common law rule of construction, that in every case, where land is charged with a trust, which cannot be performed, or where the will directs an act to be done, which cannot be accomplished, unless a greater estate than one for life be taken, the devise will be enlarged to a fee.

Counties, in this State, are bodies corporate, and may take, hold and dispose of private property for municipal uses; or such uses and purposes as subserve the public good, and the exercise of the local and subordinate legislative powers, with which they may be invested by the public law, or by private acts.

A corporation, where it has a legal capacity to take real or personal estate, may take and hold the same upon trust, in the same manner, and to the same extent, as a private person. If the trust be repugnant to, or inconsistent with, the purposes for which the corporation was created, though it might not be compelled to execute it, this would not render the trust void, but only require a new trustee to be substituted, by a court having jurisdiction, to enforce and perfect the objects of the trust.

Where a bequest is made to a county, "for the benefit of public schools," it is not void for uncertainty and indefiniteness, as to objects of the charity.

If the purposes of the trust are germain to the objects of the incorporation; if they relate to matters which will promote, and aid, and perfect those objects; there can be no legal impediment to the corporation taking the devise upon trust.

A bequest to a county, for the benefit of public schools, is consistent with the object and functions of such corporation, and it may take and administer such trust.

The establishment of public schools throughout the State, is provided for and enjoined by the paramount law; and grants of public land theretofore made, for public schools, are recognized and confirmed to the counties. (Const. Art. 10, §§ 1, 2, 3, 4, Hart. Dig. pp. 290–292.)

The counties are also entrusted with the duty of providing for the support of indigent persons resident in the county; and they are competent to take and administer a charitable bequest for that purpose.

The will and codicil, containing a general devise, in words importing a present interest, the effect manifestly was, to vest the estate in the trustee, upon the death of the devisor; and if the payment of taxes was a condition annexed to the devise, it must have been a condition subsequent to the vesting of the estate.

It is well settled, that if it can be collected from the whole will, that the act annexed to the vesting of the estate does not necessarily precede, but may accompany or follow it, it is a condition subsequent.

The jurisdiction of Courts of Chancery, over donations to charity, previous to the Statute of Charitable Uses, (43 Elizabeth,) discussed, and the authorities reviewed by the court; but left undecided, as not necessary to the decision of this case.

An objection to a codicil to a will, that it was written with a pencil, not noticed by the court.

ERROR from Bell.  Tried below before the Hon. Ed. H. Vontress.

Suit by defendants in error, against plaintiff in error, alleging that they were the heirs of Daniel Alexander, who died in Bell county, in the year 1854; and seeking to set aside the will of said Alexander, because the bequest to the county, by the words of the will, would not pass the title to the testator's land; that the county was not capable of taking, under the will, the property devised; that the purposes of the trust were too uncertain and indefinite, to be capable of being carried into effect; that the county had not paid the taxes upon the land devised, as by the terms of the will it was bound to have done; and that the codicil to the will, under which the county also claimed, was written in pencil. The petition was filed May 5th, 1855.

The will of Daniel Alexander, was admitted to probate in Bell county, June 26th, 1854, and was as follows:

State of Texas, ⎫ Know all men by these presents, that this Milam County. ⎭ is my last will and testament. I hereby request Henry J. Jewett, Esq., of Leon county, State of Texas, to act as my executor, to dispose of my property, as follows: two-thirds of my land, and other real estate, I own in the State of Texas, I wish my brothers and sisters, and their children, living in the State of Maine, or elsewhere, to possess and enjoy the benefit of, on condition that they, or either of them, come and take possession of said property, within five years from the time they receive notice of my death. One-third of my land, I wish to be appropriated to the use and benefit of schools, in the different counties in which my land is situated, on condition that the county commissioners of different counties, in which my land is situated, will pay the taxes on the land bequeathed by me for the use of schools. I wish the county commissioners to sell land, in small tracts, in order that the primary schools may be benefited yearly by the proceeds of the sale of land in each county. In case my brothers and sisters, or their heirs, should not call for the two-thirds of land, as bequeathed them, I wish the county commissioners to dispose of the two-thirds, in the same manner as I directed the one-third to be disposed of; and in case the county commissioners of the different coun-

ties, should fail to pay the taxes on the one third of my land, as directed, I wish all my land to be put in possession of my nearest relations, provided they call for it as above intimated; and in case the county commissioners should fail to act, agreeable to my request, I wish Major Jewett to appoint agents, to act in the different counties in their place; and in case of Major Jewett's death, or he should not think proper to act, I wish the county commissioners to appoint an executor, to settle my business as above intimated. What personal or other property I may possess, at the time of my death, and not mentioned in this will, I wish my executor to dispose of, as he, in his judgment, may think proper. As soon as practicable, after you are informed of my death, I wish you to write to my brother, William Alexander, of the town of Northport, Waldo county, Maine, and inform him of my death, and situation of my property, and the disposition I have made of it by will; and likewise, write to some editor of a newspaper, published in Belfast, Maine, and request him to publish my death. I likewise wish you to request some editor of a newspaper, published at Kaskaskia, or Chester, Randolph county, Illinois, to publish my death.

 June 4th, 1849.      DANIEL ALEXANDER.

To Maj. Henry J. Jewett, ⎫
 Leona, Leon county. ⎬

CODICIL.—On reflection, I have come to the conclusion to make the following alterations in my above written will, dated July 4th, 1849. 1st. Because I find aged poor are suffering with poverty, without receiving any support from the younger portion of community, I therefore, in case of my sudden death, I wish a sufficient quantity of my land to be sold to pay my debts; and after my debts are paid, I wish the county, in which I die and am buried, to have and enjoy, for the benefit of public schools, two thirds of the land in the county I am buried in; and to the remaining counties, I give and bequeath one fourth of the land I own in the different counties in this State, to the

23

suffering poor over the age of forty-five, living permanently in the different counties in which I may own land at the time of my death; and the remainder of my property, I give and bequeath to my brothers and sisters, and their heirs, living in the State of Maine, and elsewhere, to have and enjoy the benefit forever. And I hereby confirm the appointment of Henry J. Jewett, Esq., and the commissioners, as expressed in my above written will, dated July 4th, 1849. This my last will and testament, dated at Belton, Bell county, March 28th, 1853.

DANIEL ALEXANDER.

*Pendleton* and *McIlhenny*, and *J. A.* and *R. Green*, for plaintiff in error.

*Chandler* and *Turner*, and *M. D. Herring*, for defendants in error. The statute requires that all motions for a new trial, shall be filed within two days from the date of the judgment. (Hart. Dig. Art. 766.) There is no evidence, in the record, that any motion in writing was filed; if it was, there is no evidence when it was filed, or what grounds were set out in the motion for new trial; and this court has repeatedly said, that it would not reverse for any error not set out in the motion. (Sweeney v. Jarvis, 6 Tex. Rep. 36; Hart v. Ware, 8 Id. 45; Hart. Dig. Art. 766.)

Is the judgment of the court below *erroneous?* We think not, for the following reasons: 1st. Because the language in the will or codicil, does not pass the fee in the land, except that portion of the will, which gives and bequeaths one fourth of his land to the counties in which it is located or situated, for the benefit of the suffering poor. While the words, "I wish," might be sufficient to pass the title, or the right to property to the kindred in blood of the testator, yet it is not enough to pass the fee in land to a stranger, more particularly is that the case under our statute. (Hart. Dig. Art. 1221.)

The codicil seeks to bequeath two thirds of the land in the county in which he died and was buried, for the benefit of

public schools. A county is not a corporation, and therefore cannot take the land thus bequeathed. It is clear, that the title to the land cannot be vested in the county; if a county is a corporation at all, it is, at most, a *quasi* corporation, for certain and special purposes. (Jackson v. Cory, 8 Johns. Rep. 385; Jackson v. Hartwell, Id. 422; 2 Kent's Com. 266; Baptist Association v. Hart, 4 Wheat. Rep. 1.)

If the fee did not vest in the county, either because the words "I wish the county in which I die and am buried," &c., is not sufficient to pass the title, or because the county could not take for charitable purposes, surely there is no language in the will, that vests the title in the county commissioners, or Henry J. Jewett, as trustees, for the use of public schools.

The bequest is not capable of any definite application. To what public schools in the county where the testator died, are to be applied the two thirds of the land lying in that county? What is meant, or what is to be understood, by the term "public schools?" In what manner is the property to be vested in the county? There is no provision for a sale of the two thirds of the land, and an appropriation of the proceeds either to the county, or the commissioners, or any one else. (1 Jarm. on Wills, pp. 194, 231; Baptist Association v. Hart, 4 Wheat. Rep. 1; 2 Rop. on Leg., pp. 1237 to 1245; 1 Jarm. on Wills, pp. 58, 59, and 99, 100, and the cases cited in the note; Jackson v. Cory, 8 Johns. Rep. 385; Barnes v. Barnes, 3 Cranch's C. C. Rep. 269; Wheeler v. Smith, 9 How. Rep. 55.)

The land was not given to the county in fee, but only in trust, and the county cannot hold for itself; and the purposes of the trust are so general that they must all fail. (1 Jarm. on Wills, pp. 194, 231, note on p. 23, and authorities there cited; Greene v. Dennis, 6 Conn. Rep. 292; Hayden v. Stoughton, 5 Pick. Rep. 528; State v. Bates, 2 Harr. 18; 2 Pow. on Dev. pp. 9, 10; Story's Eq. Jur. § 1156; Gallego v. Attorney General, 3 Leigh's Rep. 450; 2 Wms. on Ex. p. 787, 2d Am.

ed.; Story's Eq. Jur. §§ 1183, 1197; Ellis v. Selby, 1 Mylne & C. Rep. 286.)

The language of the will is not sufficient to pass the fee. (Jackson v. Wells, 9 Johns. Rep. 222; Jackson v. Bull, 10 Id. 148; Jackson v. Embler, 14 Id. 198; Wright v. Denn, 10 Wheat. Rep. 204; Clayton v. Clayton, 3 Binn. Rep. 476; Seymour v. Ellison, 2 Wend. Rep. 13.)

There are no words of limitation, or perpetuity, in the *will.* (Wheaton v. Andress, 23 Wend. Rep. 452; Olmsted v. Harvey, 1 Barb. 102; Vanderwerker v. Vanderwerker, 7 Id. 221; Harvey v. Olmsted, 1 Comst. Rep. 483; Roe v. Daw, 3 Maule & S. Rep. 518.)

If it should be determined that we are wrong, in the former positions assigned, then we say, that the title could only pass to the county of Bell, upon the condition, that the county commissioners paid the taxes on the land appropriated to school purposes, in case the commissioners failed to pay the taxes. The testator says, that "in case the commissioners should fail "to pay the taxes on the land, as directed, I wish all my pro- "perty put in the possession of my nearest relations, provided "they call for it," &c. He died in April, 1854, and the cause was tried in March, 1857. The plaintiffs allege that the taxes were not paid by the commissioners; and defendant admitted, upon the trial, that plaintiff had paid the taxes, and made no proof that the commissioners had paid the taxes, or had offered to pay them. The commissioners having failed to pay them, notwithstanding it was a condition subsequent, it forfeited the right to the land. (2 Williams on Ex. pp. 1081, 1082, and the notes on each page.)

This case is different from the case of Finley et al v. King, 3 Pet. Rep. 346. In that case, King bequeathed a certain portion of his estate to William King, on condition of his marrying a daughter of William Triggs, but made another disposition of the property, in case he failed to do so; and the court decided, that the title passed to William King, at the death of the testator's widow, upon the ground that he made no other disposition of

the property, in case he failed to marry the daughter of Triggs, but clearly intimated, that, if the testator had made any other disposition of the property, upon his failing to marry as directed, they would have held differently. In this case, the testator gave his land to his relations, in case the commissioners failed to pay the taxes.

We are unable to see the application of the law, cited by appellant, from Hart. Dig. pp. 290 to 295; for the acts of the 26th of July, 1839, and the 5th of February, 1840, were repealed, by implication, in the change of government; and especially so, in regard to the last named act, from the fact, that, under that law, the chief justice, and two associate justices, were constituted a board of school commissioners of their respective counties, while under the law of the State, there are no such officers, as associate justices, belonging to the county court. (Const. Art. 10, Hart. Dig. pp. 77, 78.)

WHEELER, CH. J. There is nothing in the objecton, that no motion for a new trial appears to have been filed. A jury having been waived, and the case submitted to the court, a motion for a new trial was not necessary, to entitle the plaintiff in error to a revision of the judgment.

The grounds of objection urged, to the validity of the will, which require notice, are, 1st. That the words of the will are not sufficient to pass the title; and that the county is not capable of taking under the will, the title to the property devised. 2d. That the purposes of the trust are too uncertain and indefinite to be capable of being carried into effect.

It is a familiar doctrine, that in the construction of a will, the intention of the testator is the first and great object of inquiry; and the law will not suffer the intention to be defeated, merely because the testator has not clothed his ideas in technical language. Our statute, like that of New York, and many of the other States, has swept away, as Chancellor Kent has expressed it, (4 Kent's Com. 537) all the established rules of construction of wills, in respect to the quantity of interest con-

veyed, by declaring, that "every estate in lands which shall "hereafter be granted, conveyed, or devised to one, although "other words heretofore necessary at common law to transfer "an estate, in fee simple, be not added, shall be deemed a fee "simple, if a less estate be not limited by express words, or do "not appear to have been granted, conveyed or devised, by "construction, or operation of law." (Hart. Dig. Art. 169.)

It cannot be doubted, that by employing the words, "I wish "the county in which I die and am buried, to have and enjoy, "for the benefit of public schools, two-thirds of the land in the "county I am buried in," taken in connection with the words "my land," and "the land I own," used in other parts of the will, and in the context, the testator meant to devise an estate in lands; and as there are no words in the will, indicative of an intention to devise a less estate, the devise must be held to pass an estate in fee, or the whole estate of the grantor. (Hart. Dig. Art. 168.) Indeed, it is plain, that a less estate could not have been intended, because the trusts with which the testator has sought to charge his lands, and the acts which, by his will, he has required to be done, could not be performed, unless an estate in fee simple be taken by the devisee. It is a rule of construction of the common law, independently of the statute, that in every case, where land is charged with a trust which cannot be performed, or where the will directs an act to be done, which cannot be accomplished, unless a greater estate than one for life be taken, it becomes necessary that the devise be enlarged to a fee. (4 Kent's Com. 540; Collier v. Walker, 6 Co. Rep. 16; Doe v. Woodhouse, 4 Term Rep. 89.) But the necessity of resorting to this rule of the common law no longer exists. It is clear, that the testator intended to devise an estate in lands; and as a less estate is not limited, by express words, and does not appear to have been devised by construction, or operation of law, it must be deemed to be an estate in fee. Indeed, the intention of the testator, to be collected from the whole will, to devise an estate in fee simple, is too clear for doubt or controversy.

There is as little doubt of the capacity of the county to take an estate in lands, by grant or devise. The statute declares that "each county which now exists, or which may be hereafter established in this State, shall be a body corporate and politic." (Hart. Dig. Art. 206.) They may sue and be sued, plead and be impleaded. (Id. Art. 207.) They may take and hold, and dispose of, private property for municipal uses; (Id. Art. 213, et seq.) or such uses and purposes as subserve the public good, and the exercise of the local and subordinate legislative powers, with which they may be invested by the public law of the State, or by private legislative acts. (Angell & Ames on Corp. 30; 2 Kent's Com. 275, and notes.) Though public corporations, they have the same capacity in this respect and to this extent, as a private corporation, to take and hold property in trust.

In the great case upon the construction of Girard's will, Judge Story says: "Although it was, in early times, held that a corpo-"ration could not take and hold real or personal estate in trust, "upon the ground that there was a defect of one of the requi-"sites to create a good trustee, viz., the want of confidence in "the person; yet that doctrine has been long since exploded as "unsound, and too artificial; and it is now held, that where the "corporation has a legal capacity to take real or personal "estate, it may take and hold it upon trust, in the same man-"ner and to the same extent, as a private person may do. "It is true that, if the trust be repugnant to, or inconsistent "with the proper purposes for which the corporation was cre-"ated, that may furnish a ground why it may not be compelled "to execute it. But that will furnish no ground to declare the "trust itself void, if otherwise unexceptionable, but it will sim-"ply require a new trustee to be substituted by the proper "court possessing equity jurisdiction, to enforce and perfect "the objects of the trust." (Vidal v. Girard's Ex'rs, 2 How. Rep. 187–8.)

It is unnecessary to examine the cases cited by counsel for the appellee, to show that devises or bequests to unincorporated societies, for charitable uses, where the objects or beneficiaries

were indefinite or uncertain; or that charities, where no trust is interposed, and no legal interest is vested, and where the charity is general and indefinite, both as to persons and objects, and too vague to be claimed by those for whom the beneficial interest was intended; cannot be upheld and enforced by a court of equity in this country, where the statute of 43 Elizabeth, called the statute of charitable uses, is not in force. It might suffice to say, that the present is not such a case. But the case mainly relied on, and perhaps the best considered and most authoritative case cited by counsel, in support of the objection that the beneficiaries, or objects of the trust, in the present case, are too indefinite and uncertain to enable a court of equity to uphold the devise, is the case of The Baptist Association v. Hart, 4 Wheat. Rep. 1. But that decision would not be an authority for the doctrine contended for, as applied to the present case. That was a bequest of personal property, to an unincorporated society, "The Baptist Association that, for "ordinary, meets at Philadelphia annually, which I allow to be "a perpetual fund for the education of youths of the Baptist "denomination, who shall appear promising for the ministry, "always giving a preference to the descendants of my father's "family." The court held, that the association, not being incorporated, could not take this trust, as a society; that the individual associates could not take, as trustees, they being a body vague and uncertain; and that no legal interest vested; and that legacies, to charities, were sustained in England, under the statute of Elizabeth only. The devise, in the present case, is to a corporation, capable, as we have seen, of taking the legal estate in trust; and the objects of the charity are certain and definite. The case of the Baptist Association v. Hart, therefore, clearly is not a case in point. But, if that were a case in point, the decision has been greatly modified, if its authority has not been entirely overthrown, by subsequent investigations and decisions; and particularly by the great case of Vidal v. Girard's Executors, decided by the same learned court. (2 How. Rep. 127.) In distinguishing this latter case from the former,

Mr. Justice Story, delivering the unanimous opinion of the court, observed that, in the former case, "the donees were an "unincorporated association, which had no legal capacity to "take and hold the donation, in succession, for the purposes of "the trust, and the beneficiaries were also uncertain and indefi- "nite." Both circumstances, therefore, concurred ; a donation ·to trustees incapable of taking, and beneficiaries uncertain and indefinite ; and he observes that the court came to the conclusion, that at the common law, antecedent to and independent of the statute of 43 Elizabeth, ch. 4, no donation to charity could be enforced in chancery where both of these circumstances, or rather, where both of these defects occurred. He further observes, that the authorities and lights upon which the court decided, were in no small degree shadowy, obscure and flickering. The court review the additional authorities, now brought to their attention ; and, observing that very strong additional light has been thrown upon the subject, conclude, that these new sources of information "establish, in the most satisfactory "and conclusive manner, that cases of charities, where there "were trustees appointed for general and indefinite charities, "as well as for specific charities, were familiarly known to, "and acted upon, and enforced in the Court of Chancery." "Whatever doubts, therefore, (they say) might properly be en- "tertained upon the subject, when the case of the Trustees of "the Philadelphia Baptist Association v. Hart, (4 Wheat. Rep. "1,) was before this court, (1819,) those doubts are entirely "removed by the late and more satisfactory sources of informa- "tion to which we have alluded."

And in the later editions of his Commentaries, Judge Story, upon a review of the authorities, attains a conclusion the contrary of that expressed in his first publication, and says : "Upon "the whole, it seems now to be the better opinion, that the "jurisdiction of the Court of Chancery over charities, where no "trust is interposed ; or, where there is no person *in esse*, "capable of taking ; or, where the charity is of an indefinite "nature ; is to be referred to the general jurisdiction of that "court, anterior to the statute of Elizabeth." (2 Story's Eq.

Jur. § 1162.) Chancellor Kent, in a learned note to his Commentaries, where he examines this subject, quotes the observation of Chancellor Walworth, "that the decision in the case of "the Baptist Association v. Hart, 4 Wheat. Rep. 1, is gene-"rally admitted to be wrong;" and after reviewing the authorities, says, "the fact, I think, may be considered indisputable, "that chancery uses are lawful uses by the common law, and "that the statute of Elizabeth was only an ancillary remedy, "now supplied by chancery, as the rightful original tribunal for "such trusts." (2 Kent's Com. 288, note, 8th edit.) Similar opinions appear to have been held in Massachusetts, New York, (McCartee v. Orphans' Asylum Society, 9 Cow. Rep. 437; Van Duzer v. Van Duzer, 6 Paige's Rep. 367;) Pennsylvania, (Whitman v. Lex, 17 Serg. & R. Rep. 88;) Kentucky, (Moore v. Moore, 4 Dana's Rep. 357;) Tennessee, (Dickson v. Montgomery, 1 Swan's Rep. 348;) Mississippi, (Wade v. American Colonization Society, 7 Sm. & Marsh. Rep. 663;) and in many, if not most of the other States; and see cases cited in notes to Perkins' Ed. of Jarm. on Wills, vol. 1, p. 194; Am. notes to Rop. on Leg. vol. 2, p. 1115; 4 Kent's Com. 8th ed. 508, and notes; 2 Story's Eq. Jur. § 32.

But it is unnecessary, in the present case, to decide whether equity will enforce a donation to charitable uses, where the donees are uncertain, or where the beneficiaries, and objects of the trust, are uncertain and indefinite. There is no such uncertainty in the present case. We have seen that the trustee is capable of taking and holding the estate in trust. The purposes of the trust are definite and certain. And if those purposes are germain to the objects of the incorporation; if they relate to matters which will promote, and aid, and perfect those objects; there can be no legal impediment to the corporation taking the devise upon trust. (2 How. Rep. p. 189, and see the case of Inglis v. The Sailor's Snug Harbor, 3 Pet. Rep. 99.) That such are the purposes of the trust, is sufficiently apparent, by reference to the subjects, confided by law, to the management and local government of the counties, and particularly the

laws which enjoin upon them the duty of executing the identical trusts, which this devise was intended to aid in advancing and perfecting.

By the constitution of the State, the Legislature is required "to make suitable provision for the support and maintenance of public schools;" to "establish free schools throughout the State," and "furnish means for their support, by taxation on property;" "to set apart not less than one tenth of the revenue "of the State, derivable from taxation, as a perpetual fund, "which fund shall be appropriated to the support of free public "schools." (Const. Art. 10, §§ 1, 2.) The establishment of public schools throughout the State, is thus provided for and enjoined by the paramount law. And the grants of public land, heretofore made for public schools, are recognized and confirmed to the counties. (Id. § 3, 4; Acts of 26 Jan. 1839, and 5 Feb. 1840, Hart. Dig. p. 290, 292.) And by act of the 16th of January, 1850, it is provided, that every county which has been, or may hereafter be established, shall have surveyed and set apart four leagues of land, for the purposes of education, in conformity to the act of the 26th of January, 1839. (Hart. Dig. Art. 896.) The act of the 21st of January, 1854, "to establish a system of schools, (Laws of 5th Leg. ch. 18,) sets apart two millions of dollars, in the treasury of the State, "as a school fund, for the support and maintenance of public schools;" and constitutes the chief justices and county commissioners of the several counties, a board of school commissioners for their respective counties, to form their respective counties into school districts, and order an election of trustees for each district. (Id. § 2.) The trustees, so elected, are constituted a body corporate and politic, with the capacity to sue and be sued, to hold and dispose of property, and "do such acts and things "as are incidental and necessary to the performance of their "duties," as prescribed by the law. (Id. § 15.) This, and the subsequent Acts of the 29th of August, 1856, and the 5th of February, 1858, (Laws 6th Leg. p. 107; Id. 7th Leg. 124,) contain further provisions for the establishment and support of

public schools, which it is not necessary to our present purpose to notice.

It is thus seen, that the counties are empowered, by law, to take and hold land in trust, for the uses and purposes of the donation here in question; and that they are provided, by law, with the requisite machinery and means, and entrusted with the duty of executing the trust, in the manner, and for the identical objects and purposes, contemplated by the donor. There is, therefore, no foundation for the objection, that the county is incompetent to take, as trustee; or, that the objects of the trust are indefinite; or, that the county is incompetent to take and administer the trust. It is true, the individual beneficiaries, who shall be recipients of the donor's bounty, are not known; if they were, it would not be a charity. The counties are entrusted with the duty, to provide for the support of indigent persons, resident in the county, (Hart. Dig. Art. 309;) and it cannot be doubted, they are competent to take and administer a charitable bequest for that purpose.

There is nothing in the objection, that the county had not paid the taxes upon the land. If the true construction of the whole will and codicil be, that the payment of taxes, by the county commissioners, was a condition annexed to the devise, it cannot be supposed that the payment was intended to precede the vesting of the estate; it must have been intended to follow it. And it is well settled, that, if the act does not necessarily precede the vesting of the estate, but may accompany or follow it; if this is to be collected from the whole will, the condition is subsequent. (Finlay v. King, 3 Pet. Rep. 346.) The will and codicil contain a general devise, in words importing a present interest, and the effect manifestly was, to vest the estate in the trustee, upon the death of the devisor.

Our opinion, therefore, is, that the will contains a legal and valid devise of the property in question, to the county, in trust, for the uses and purposes therein expressed. To hold otherwise, would be to deny to the courts of this State, the power to uphold or enforce a charitable bequest, in any case. Such a

determination, it is believed, would not find countenance in any well considered decision.

We are of opinion, therefore, that the judgment be reversed, and such judgment be here rendered, as the court below ought to have rendered.

Reversed and reformed.