

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann

~~JOHN REED CRIMINAL~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Dr. George W. Cox
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-2580-A
Re: Acceptance of a gift by Liberty
County and operation of a clinic or
dispensary as public health and san-
itation measure.

Your recent request for an opinion of this Department upon the
questions as are herein stated has been received. Your letter reads in
part as follows:

"Sometime ago the Honorable Murphy Cole, County
Auditor of Liberty County, requested an opinion of
your Department relative to the establishment of a clin-
ic in Liberty, Texas.

"In your opinion numbered O-2580 you stated that
the Commissioners' Court of Liberty County may lease
the clinic buildings in question or may accept said
buildings by deed as a gift only after the court has
been duly authorized to establish and maintain a county
hospital by the majority of the qualified tax paying
voters of the county at a special election. According
to Mr. Cole's letter the facts of the case are these:
In 1935 Miss Yettie Kersting of Liberty County inspired
by an ambition to leave a heritage to the needy of the
county, particularly the sick, made her will dedicat-
ing her entire estate to Liberty County and directing
that the proceeds of same be used for the purpose of
constructing a county hospital.

"Since Miss Yettie is still alive and has recent-
ly decided that she would like to see at least a par-
tial realization of her ambition before her death,
she has made a proposition to the Commissioners' Court
that she would, with her own money, construct a medical
clinic building and hold the remainder of her property
under her charge and control until her death and then
the terms of her will would take affect, which would
give a group of trustees authority to buy, sell, or
trade -- or convert her property into cash for the

purpose of constructing a hospital. In view of the
fact that this wonderful gift has been offered, the
Commissioners' Court of Liberty County desires to
accept the gift of the clinic and provide for the
maintenance thereof from county funds. However, it
seems from your opinion numbered O-2580 that this
money could be accepted only after the court had
been duly authorized to establish and maintain a
county hospital by a majority vote of the qualified
voters of the county at a special election.

"Article 4418f of the Revised Civil Statutes is
as follows: 'It shall be lawful for the State Depart-
ment of Health to accept donations and contributions
to be expended in the interest of the public health
and the enforcement of public health laws. The Commis-
sioners' Court of any county shall have the authority
to appropriate and expend money from the general reve-
nues of its county for and in behalf of public health
and sanitation within its county.'

"In view of this Article, would the Commissioners'
Court be authorized to spend money for the maintenance
of this public health clinic without first establishing
a county hospital? Should it be determined that the
county is not authorized to spend money under such cir-
cumstances and that a county hospital must first be es-
tablished before such gift could be accepted, the fol-
lowing petition has been drafted by more than 10 per
cent of the qualified property tax paying voters of the
county:

"' We, the undersigned qualified voters residing
in Liberty County, Texas, do respectfully petition your
Honorable Body to order an election in the said Liberty
County for the purpose of determining whether or not the
County shall maintain from year to year, together with
the State and Federal Governments, a County owned clinic
which shall have been erected and presented to the County
as a gift, and which shall require no increase in taxes
or no bond election.

"' Dated this the 16th day of September, A.D., 1940.'

"Under circumstances as these where there will be
no increase in taxes or no bonds issued, would the Com-
missioners' Court be authorized to call such an election,
and what procedure would they be required to follow?"

The letter of Mr. Cole, referred to above, furnishes the following additional information:

"The Liberty-Chambers County Medical Association has agreed to cooperate by naming from among its own membership physicians who will give a certain number of hours each week to the treatment of the indigent sick, and at no expense to the county.

"The Federal Government, through the State Department of Health, will contribute approximately $4,000.00 per year by employing a physician, a nurse and furnishing medicine for the treatment of venereal diseases, if a county clinic is established and made available for the purpose.

"All the other expense of the clinic, except the medical fees in the treatment of the indigent sick, and for venereal diseases control, as mentioned above, would be borne by Liberty County."

Article 4478, Revised Civil Statutes, 1925, enacted in 1913, (33rd Leg., p. 71), reads as follows:

"The commissioners court of any county shall have the power to establish a county hospital and to enlarge any existing hospitals for the care and treatment of persons suffering from any illness, disease or injury, subject to the provisions of this chapter. At intervals of not less than twelve months, ten per cent of the qualified property tax paying voters of a county may petition such court to provide for the establishing or enlarging of a county hospital, in which event said court within the time designated in such petition shall submit to such voters at a special or regular election the proposition of issuing bonds in such aggregate amount as may be designated in said petition for the establishing or enlarging of such hospital. Whenever any such proposition shall receive a majority of the votes of the qualified property tax paying voters at such election, said commissioners' court shall establish and maintain such hospital and shall have the following powers:

"1. To purchase and lease real property therefor, or acquire such real property, and easements therein, by condemnation proceedings.

"2. To purchase or erect all necessary buildings, make all necessary improvements and repairs and alter any existing buildings, for the use of said hospital.

The plans for such erection, alteration, or repair
shall first be approved by the State Health Officer,
if his approval is requested by the said commission-
ers' court.

"3. To cause to be assessed, levied and collect-
ed, such taxes upon the real and personal property own-
ed in the county as it shall deem necessary to provide
the funds for the maintenance thereof, a nd for all other
necessary expenditures therefor.

"4. To issue county bonds to provide funds for the
establishing, enlarging and equipping of said hospital
and f or all other necessary permanent improvements in
connection therewith; to do all other things that may be
required by law in order to render bonds valid.

"5. To appoint a board of managers for said hospital.

"6. To accept and hold in trust for the county, any
grant or devise of land, or any gift or bequest of money
or other personal property of any donation to be applied,
principal or income or both, for the benefit of said hos-
pital, and apply the same in accordance with the terms of
of the gift."

Article 4481, Revised Civil Statutes, 1925, which was enacted as
a portion of the 1913 Act, reads as follows:

"The board of managers may also establish and oper-
ate an outpatient department or free dispensary and clin-
ic at the hospital or in t he city nearest to which the
hospital is located, with branch dispensaries or clinics
in every city or t own in the county of five thousand pop-
ulation and over. They shall appoint a physician or phy-
sicians, who shall serve at such dispensaries or clinics,
and shall determine the amount of time required to be
spent at such dispensaries or clinics by such physicians,
and shall fix the salaries, if any, of such physicians.
Said board shall also appoint one or more trained visiting
nurses to serve in connection with each such dispensary or
clinic, and in connection with the hospital, and shall fix
their salaries within the limits of the appropriation made
therefor by the commissioners' court."

Article 4418f, Vernon's Texas Civil Statutes, quoted in your let-
ter of request, was passed in 1927, Acts 40th Leg., 1st C.S., p. 131, ch.
42, § 10.

Dr. George W. Cox, Page 5 (O-2580-A)

The Act of which Articles 4478 and 4481 were a part is concerned with the establishment and operation of a county hospital and the regulation, service and management in connection therewith. The first Section authorizes the establishment and enlargement, issuance of bonds, other incidental powers and the acceptance and application of gifts "for the benefit of said hospital." Sections 2 and 3 provide for a board of managers, superintendent, and staff of visiting physicians. Section 5 provides for the establishment, in connection with said hospital, of a special and separate school for the education, care and treatment of children suffering from tuberculosis and matters relative thereto. Section 6 authorizes the Board of Managers to secure from the State Board of Health pamphlets, circulars and bulletins at actual cost of printing on communicable diseases and distribute same to various organizations and individuals. Provision is made for the keeping of records and accounts; making reports to the Board of Managers and Commissioners' Court; and the admission and discharge of patients. Wherever county hospitals may exist in connection with a county poor house or on its grounds the terms of the Act shall apply in like manner as if the hospital had been originally established under the provisions of the Act. Article 4481, quoted above, appears as Section 4 of the Act and authorizes the establishment and operation of an "outpatient department or free dispensary and clinic" and "branch dispensaries or clnics" by the "Board of Managers" of the hospital.

It will be noted that Section 4 as well as other sections of the Act places authority in the Board of Managers of the hospital to establish an provide the particular departments and services mentioned. A careful consideration and examination of the Act as a whole leads us to the conclusion that the legislative purpose was to enact comprehensive provisions for the establishment, operation, government, and management of county hospitals, as such, and to give directions and define the powers and services which might be performed in connection with, and as a part of the hospital institution. This being true, it does not necessarily follow that when the Legislature placed it within the statutory powers of the hospital or its board of managers to do an act or perform a service, when established, that the county or the commissioners' court could not under its general powers furnish any of the facilities or do any of the acts which could be done by the hospital or Board of Managers if such institution were established.

Subsequent to the passage of the Act of 1913, the Legislature granted general powers to the commissioners' court in the following language:

" . . . The Commissioners' Court of any county shall have the authority to appropriate and expend money from the general revenues of its county for and in behalf of public health and sanitation within its county." (Art. 4418f, V.T. C.S.)

No detailed direction is given as to how such general power shall be exercised but this matter is left largely within the discretion of the commissioners' court.

In our opinion No. O-2281 we had before us for consideration the question as to whether a particular county could establish a "county health unit." After pointing out the duties of the County Health Officer and the provisions of Article 4538a, Vernon's Texas Civil Statutes, authorizing the Commissioners' Court to employ one or more Graduate Registered nurses whose duty it is to visit the public schools in the county, investigate the health conditions and sanitary surroundings of such schools, cooperate with the duly organized Board of Health and local health authorities in general and "perform such other and further duties as may required of them by the Commissioners' Court, " it was ruled:

"Although Section 10 of the Act (Article 4418f) does not expressly authorize the creation of a 'County Health Unit, ' it does authorize the expenditure of funds from the General Fund of the county for and in behalf of public health and sanitation in the county.

"It is, therefore, the opinion of this Department that Article 4418f, Vernon's Civil Statutes, authorizes the Commissioners' Court to appropriate and expend money from the general fund of the county for and in behalf of public health and sanitation within the county. Such statute does not place any control or limitation on such expenditures as to how the money may be expended. Such funds expended in cooperation with the State Health Department in its authorized administration of the health and sanitation laws of the State within the county would meet the requirement of the Statute. No additional levy of taxes outside of the constitutional limit of twenty-fice cents on the hundred dollar valuation (Article 8 of Section 9 of the Constitution) is contemplated or authorized."

When it is reasonably necessary in behalf of the public health and sanitation within the county, it is our opinion that the Commissioners' Court of a county may appropriate and expend money from the general revenues of the county for treatment, consultation and medical supplies without bonds and establishing a hospital, notwithstanding such services might be included within the statutory authority of the hospital if established.

The general rule is that counties may take by gift and hold the legal title to property or in trust for a public use or purpose inless prohibited by statute. 7 R.C.L. p. 947, § 23; 5 R.C.L. p. 320 et seq; 20 C.J.S. p. 994 et seq. In Scholf v. Collins County (Sup. Ct. 1891), 16 S.W. 314, a pauper who had been received and treated by the county, prior to the execution of the deed, conveyed her homestead to the county. It was contended that the county

could not hold such title against the lawful heirs that at the time the county acquired title it was not "acquired for any public purpose, such as a site for a courthouse, jail, etc., and that the same has never been used by the county for any such public use or purpose, except the said Lucretia never changed her residence, but lived upon the land, and was supported by the county, under the terms of the deed until she died in 1886, and the county since her death has been renting out said land." The court held:

"We know of no law that limits the power of counties to acquire title to land to such only as are intended for uses mentioned in the third objection. Articles 680-682 of the Revised Statutes (See Article 1576, R.C.S., 1925) contain an express recognition of the right of counties to take title to and enjoy real estate without any limitation being expressed as to the purposes for which it shall be used. Bell County vs. Alexander, 22 Tex. 350."

In Bell County vs. Alexander, (1858) 22 Tex. 351, the testator left a portion of his property to one county for the benefit of the public schools and a portion to other counties for the benefit of the suffering poor over the age of forty-five. It was contended that the county was not capable of taking, under the will, the property devised. In over-ruling the contention and upholding the devise the court stated:

"There is as little doubt of the capacity of the county to take an estate in lands, by grant or devise. . . . They may take and hold, and dispose of, private property for municipal uses (Hart. Dig. Art.213, et seq.) or such uses and purposes as subserve the public good, and the exercise of the local and subordinate legislative powers with which they may be invested by the public law of the state, or by private legislative acts. Angell & Ames Corp. 30; 2 Kent Com. 275, and notes. Though public corporations, they have the same capacity in this respect and to this extent, as a private corporation to take and hold property in trust.

". . . The counties are entrusted with the duty, to provide for the support of indigent persons, resident in the county (Hart. Dig. Art. 309); and it cannot be doubted, they are competent to take and administer a charitable bequest for that purpose."

Here the Commissioners' Court is authorized to appropriate and expend money and it is made its duty to promote the public health and sanitation within its county. It may be necessary to furnish consultation, treatment, promote public education in these matters, and dispense medicines. It is our opinion that the County acting through the Commissioners' Court may accept the gift of a building in furtherance of such purpose and as a central place for its activities. We do not mean of course that the Commissioners' Court may build, establish, equip, and maintain a county hospital or issue bonds therefor other than as provided by Chapter Five, Title 71, Revised Civil Statutes, 1925. That question is not before us.

It is our opinion that the Commissioners' Court of Liberty County may spend money for the maintenance of a public health clinic without first establishing a county hospital, under the facts presented.

Our opinion No. O-2580 is so modified as to conform to the conclusions herein expressed.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By
s/ Cecil C. Cammack
Cecil C. Cammack
Assistant

CCC:N:egw

APPROVED OCT 29, 1940

s/ Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

This opinion considered
and approved in limited
conference