Paschal v. Acklin.

27    173
75    501
27    173
90    645

### F. L. Paschal and wife v. A. Acklin and others.

The plaintiff claimed the land in controversy by virtue, in part, of her right of inheritance as the mother and heir of the deceased children and heirs of her former husband. Among the issues raised by the pleadings was the question of fact, whether or not the plaintiff was the mother, and as such the heir, of the children and heirs of her former husband; but the jury, in their special verdict upon the issues submitted to them, omitted to find upon the particular issue above referred to. *He'd*, that the verdict is defective, and in consequence the judgment below, in favor of the plaintiff, is reversed and the cause remanded.

In actions involving the title to land, the plaintiff need not deraign his title beyond the common source under which both he and the defendant claim.

By deed or act of sale made before a notary public in the State of Louisiana in the year 1837, the vendor conveyed certain lands in Texas to A. as "the legally constituted attorney of" B., and recited that said attorney was "here present, accepting for the said" B. *Held*, that by such deed or act of sale, the title passed direct to B., and not to A. as the agent or trustee of B.

The records, judgments or proceedings of the courts of one State can not pass the title to land situated in another State; though courts of equity, having jurisdiction of the person, may compel a party to convey land beyond their jurisdiction; in which case it is the act of the party, and not the decree of the court, which transmits the title.

To make a will available as a muniment of title in the courts of this State, it must have been probated in this State.

Although a will has been probated in another State, upon proof which would authorize its admission to probate in this State; yet, a certified copy of the will and of its probate, taken from the records of the court of the other State, is not admissible in our courts as a muniment of title.

A testator, resident in the State of Tennessee, made his will in Louisiana in the year 1841, and after bequests to his wife, children, &c., devised to trustees for charitable uses all his " property, real and personal, of whatever kind and nature, that is situated in the States of Tennessee and Mississippi, or in any other common law State, where trust estates may be created." *Held*, that, as the common law was in force in Texas at the date of the will, and as trust estates were permissible in Texas at that time, the testator's property in Texas passed to the trustees under the devise.

The restriction upon the power of parents to deprive their children by will of more than one-fourth of their estates, imposed by the statute of wills of 1840, since repealed, was applicable to non-residents of Texas, as well as to citizens.

In applying the provision of the statute above referred to, regard must be had to the whole of the estate of the testator, wherever situate, and not merely to such of it as may be in Texas; and if the value of the portion devised away from the children did not exceed the value of one-fourth of the entire estate wherever situate, the devise was good.

It is a fundamental principle that a party will not be permitted to take under a will, and at the same time to take adversely to it.

A will is not void because the testator attempted to bequeath more than the disposable portion of his estate: it is only voidable to the extent of the excess.

A will when admitted to probate is presumptively valid and good, and so remains until it is invalidated in a direct proceeding, between the proper parties, in the proper tribunal. Its validity, when probated, cannot be called in question in a collateral proceeding.

Bequests to charitable uses are not within the constitutional prohibition of perpetuities and entailments.

See the opinion for a discussion of the characteristics of a devise to charitable uses as distinguished from gifts or bequests to individuals, and for a review of leading cases upon the subject.

ERROR and APPEAL from Bexar. Tried below before the Hon. Thomas J. Devine.

This suit was instituted to the Spring Term, 1857, of the Bexar District Court, by Adalicia Acklin, joined by her husband, Joseph

Paschal v. Acklin.

A. S. Acklin, against F. L. Paschal and wife, Ira L. Hewitt and others deriving title under Paschal and wife, and also against the trustees of the Methodist church of the city of San Antonio, who also claimed under Paschal, for the recovery of a certain lot or parcel of ground in San Antonio.

In their original petition the plaintiffs claimed the whole of the property in controversy, but by an amendment reduced the claim to one undivided half of it.

The defendants pleaded the general issue, and the limitations of three and five years, and suggested valuable improvements made in good faith. In an amended answer, filed on 23d of March, 1858, they further alleged that Isaac Franklin, deceased, under whom the plaintiffs claimed by inheritance, departed this life in the year 1845, leaving his last will and testament, by the provisions of which all his property in all common-law States where trusts could be created was bequeathed to trustees, for the purpose of erecting and endowing a seminary of learning to be established in Sumner county, Tennessee, and to be called the "Isaac Franklin Institute." That the State of Texas was, at the time of the death of said Franklin and at the date of said last will and testament, a common-law State; and that all the land owned by said Franklin within said State of Texas, by virtue of said will, passed to and became vested in said trustees, for the use and benefit of said institute so to be established. That said last will and testament was duly probated and ordered to be executed by the competent tribunals of the States of Louisiana and Tennessee; and that the trustees named in said will, and those substituted in their place, proceeded to execute the trust. That the State of Tennessee, in December 1847, incorporated the trustees of the Isaac Franklin Institute, which corporation still continues. That the plaintiff, Adalicia Acklin, at various times and occasions, treated and contracted with said trustees, and acknowledged the rights of the said institute under said will, whereby the plaintiffs are concluded.

At the same term, Joseph H. Acklin and William D. Acklin, minors, intervened by their next friend, Joseph D. Wade, and claimed an interest in the property in suit, "by virtue of their

heirship from Emma Franklin, deceased, half sister of these inter-
venors, and the last surviving child of the marriage of Isaac
Franklin and Adalicia Franklin, now Adalicia Acklin." Where-
fore the intervenors prayed to be adjudged the owners of such por-
tion of the property in controversy as they were entitled to under
the laws of descent and distribution of this State.

The cause came to trial at the Fall Term, 1858. The plaintiffs
offered in evidence a deed or act of sale executed by Pleasant
Branch Cocke, on the 5th day of July, 1837, before a notary
public in the city of New Orleans. By this instrument, Cocke
conveyed the one undivided half of certain lands in Texas, in-
cluding the property in controversy, "unto James H. Shepperd
of the city of New Orleans, (the legally constituted attorney of
Isaac Franklin of this city, by an act passed before me, notary,
on the 15th of May in the present year,) here present, and ac-
cepting for the said Isaac Franklin, his heirs and assigns," &c.

The plaintiffs further proved that the plaintiff Adalicia was the
widow of Isaac Franklin, formerly of Sumner county, Tennessee,
who died at one of his plantations in Louisiana, on the 27th of
April, 1846. That Isaac Franklin and his said wife had, as issue
of their marriage, three daughters, two of whom died in June,
1846, and the third, Emma, died in the year 1855. That in
May, 1849, the widow of said Franklin, being the present plain-
tiff Adalicia, married Joseph A. S. Acklin, now associated with
her in the prosecution of this suit.

It was admitted that the intervenors, Joseph H. and William
D. Acklin, were the half brothers of Emma Franklin, deceased,
and as such were joint heirs with their mother, Adalicia Acklin,
of any rights that Emma Franklin may have died possessed of in
the State of Texas.

It was admitted that the co-defendants of F. L Paschal claimed
under warrantee deeds from him. The defendants put in evidence
a quit-claim deed from R. R. Barrow to F. L. Paschal, made in
the year 1851, for the property in controversy. They also read
in evidence a transcript from the records of the probate court of
the parish of West Feliciana, State of Louisiana, containing the
petition for the probate of the last will and testament of Isaac

Franklin, and that instrument itself together with its probate, &c. By this will, which was executed on the 24th of May, 1841, the testator, after making ample provision for his widow and children, with bequests to other relatives, made the following general disposition of his estate: "I give and bequeath all my property, real and personal, of whatever kind or nature, that is situated in the States of Tennessee and Mississippi, or any other common-law States, where trust estates can be created, together with my bank stocks, and effects and credits, and in case I should have no other children by my said marriage except my said daughter Victoria, then two-thirds of all my property, movable and immovable, that is situated in the State of Louisiana,—but if there should be two children born of said marriage, then only an undivided one half of all my said property, movable and immovable, slaves, &c., that is situated in said State of Louisiana; and if there should be three or more children born of said marriage, then I only give an undivided one-third part of my said property, movable and immovable, slaves &c., that is situate, lying and being in said State of Louisiana,—and also the rest and residue of my estate, wherever situated, in trust to my two brothers, James and William Franklin, of Sumner county aforesaid, for the following purposes, to wit," &c.

The will then proceeded to declare the trusts upon which this devise was made, the object of which was the erection, endowment and maintenance of an academy or seminary on the testator's "Fairview plantation" in Sumner county, Tennessee, "for the education, board and clothing of the children of my brothers and sisters and their descendants, as well as my own children and their descendants, in the best and most suitable and proper manner for American youths, having a particular regard to a substantial and good English education, and such other higher and ornamental branches as the aforesaid revenues, &c., will enable my said trustees to accomplish; and if the revenues, &c., should be sufficient therefor, I also wish that the poor children in said county of Sumner, of unexceptionable character, and such as my trustees may select, should likewise be educated and supported during the time at the same seminary; and after the death of my aforesaid brothers,

12*

it is my will and desire that the aforesaid trust shall be continued and pass over forever in the heirs of my said brothers, and that the magistrates of the County Court of said county of Sumner and State of Tennessee, and their successors in office, be thereafter the perpetual superintendants of the aforesaid seminary, to see that my intentions be fully carried into effect."

Upon the transcript thus put in evidence by the defendants, was an endorsement signed by the attorneys of the plaintiffs and the intervenors, as follows : "We hereby waive the filing and recording of the within instrument, specially reserving all other rights and exceptions thereto."

The plaintiff objected to the introduction of the said transcript, "on the ground that said copy did not emanate from the proper authority having custody of the original of the will, nor did said copy emanate from the court before which said will was probated." The court overruled the objection, and the plaintiffs excepted.

The defendants, also, read in evidence a notarial copy of an instrument by which the plaintiff Adalicia, on the 12th day of December, 1846, accepted the provisions of the said will of Isaac Franklin, her deceased husband, and renounced all rights of community, dower, or otherwise, to which she might be entitled by the laws of Louisiana, Tennessee, or other States wherein the property of said Franklin might be situated; but specially reserving all rights to which she was entitled as mother and heir of her two daughters by said Franklin, who died in June, 1846.

Other documents pertaining to the estate of Isaac Franklin, comprising the inventory amounting to $443,886, and the act of Tennessee incorporating the Isaac Franklin Institute, were, also, put in evidence by the defendants, but are not necessary to be here noticed in detail.

In rebuttal of the title set up by the defendants under the deed from Barrow to Paschal, the plaintiffs offered in evidence a deed or act of sale executed to Barrow by Pleasant Branch Cocke, before a notary public in the city of New Orleans, on the 22d day of March, 1839. By this instrument Cocke conveyed to Barrow certain interests in divers tracts of land in Texas, comprising the

property in controversy, which, it was recited, he owned "conjointly with Isaac Franklin."

The court below, after explaining to the jury the nature of the claims advanced by the plaintiffs, the intervenors, and the defendants, instructed them as follows :  "4th. To entitle the plaintiffs and intervenors to recover, they must show, to your satisfaction, a title in themselves, or those under whom they claim. 5th. It is not necessary for the plaintiffs to show a continuous chain of title in writing from the Baron De Bastrop down to Isaac Franklin. A verbal sale of the land in suit by one or more of those owning or having the power to dispose of it, if made before the year 1840, is as complete legal evidence of a sale of the land, as if such transfer was by deed or other instrument in writing. 6th. If you believe, from the evidence, that Adalicia Acklin is the surviving wife of Isaac Franklin, and that Franklin, at the time of his death in 1846, was the owner of one-half of the land described in plaintiffs' petition, you will so state in your verdict, either in the affirmative or negative. 7th. If you find in the affirmative, you will next enquire and state, if you find in the affirmative, that the intervenors, Joseph H. and William D. Acklin, are the half-brothers of Emma Franklin, deceased. 8th. You will next enquire from the evidence, is the document marked A the last will and testament of Isaac Franklin, deceased ; and you will state in the affirmative or negative, as the case may be. 9th. You will next enquire, from the evidence, did Mrs. Franklin, (now Mrs. Acklin,) voluntarily, and for a valuable consideration, accept and agree to the terms and provisions of her husband's will ? If you find in the affirmative, you will say so ; if in the negative, you will say so."

The verdict returned was as follows :  " We, the jury, believe from the evidence before us, that Adalicia Acklin is the surviving wife of Isaac Franklin, deceased; and that said Isaac Franklin, at the time of his death, in 1846, was the owner of one-half of the land described in the petition of plaintiffs.  2. We also believe, from the evidence before us, that the intervenors Joseph H. and William D. Acklin, are the half-brothers of Emma Franklin, deceased.   3. We further believe, from the evidence before us, that the will or document marked A is the will and testament of Isaac

Franklin, deceased. 4. We do not find, from the evidence before us, that Adalicia Acklin, surviving wife of Isaac Franklin, deceased, did receive a valuable consideration for voluntarily agreeing to the terms and provisions of the will and testament of said Franklin, deceased."

Whereupon it was adjudged and decreed by the court that the plaintiffs and intervenors recover three-fourths of one-half of the land in controversy, of which three-fourths the plaintiffs have thirty-three forty-eighth parts, and the intervenors fifteen forty-eighth parts; for the partition of which, commissioners were appointed, with directions to report at the ensuing term. The plaintiffs gave notice of appeal.

The co-defendants of Paschal and wife moved the court to instruct the commissioners, in their partition of the property, to first set apart the portion of the property held by Paschal to the plaintiffs, to the extent of their recovery, inasmuch as it was in proof that these defendants held under said Paschal by warrantee deeds. This motion was overruled, and these defendants appealed.

The defendants moved for a new trial, assigning for cause that the charge of the court was contrary to law, and the verdict of the jury contrary to the evidence. The motion was overruled, and the defendants gave notice of appeal.

The defendants Paschal and wife bring the cause up by writ of error; their co-defendants by appeal.

The co-defendants of Paschal and wife assigned errors: 1st. In the instructions of the court to the jury. 2d. That the verdict was contrary to the evidence. 3d. That the judgment of the court was contrary to the law and the evidence. 4. That the court erred in overruling the motion to instruct the commissioners as to the mode of partition. 5. In overruling the motion for a new trial.

The plaintiffs assigned as error, that the court erred in permitting the defendants to read to the jury the document purporting to be the will of Isaac Franklin.

The plaintiffs and intervenors jointly assigned as errors that the court construed the will of Isaac Franklin so as to make it

refer to lands in Texas; and that the court sustained the clause in the will containing a devise to charity.

The defendants Paschal and wife also assigned errors to the instructions of the court and the verdict of the jury in general; and to the refusal of a new trial, "the case made and proved not warranting the verdict or any relief whatever, the will really passing the property to the Franklin Institute, and there being no evidence to entitle Emma Franklin to any property in the *locus in quo* as a forced heir." And further, that "the judge's charge and whole action proceeded upon the notion of forced heirship, when Emma Franklin was never domiciled in Texas, and when the property passed by Franklin's will to the Franklin Institute, and, therefore, an outstanding title was shown."

*I. A. & G. W. Paschal*, for F. L. Paschal and wife.—The court erroneously assumed that the deed from Cocke, of the 5th of July, 1837, to J. H. Shepperd, "the legally constituted attorney of Isaac Franklin," did pass the legal estate to Franklin, when the same, for anything that appears, yet remains in Shepperd, who was the proper party to sue. The estate, at most, may have been held by Shepperd in trust for Franklin, and the legal title should have been passed to him before he could maintain an action in his own name. The description, "agent of Franklin," is only personal, and does not operate, in any sense, to establish a trust for Franklin. But if the legal estate passed to Shepperd, and the equitable estate to Franklin, the plaintiffs in ejectment defeated themselves by showing the legal title out of their ancestor. In such cases, the thing to be kept constantly in view is, where is the legal title? (Adams on Ejectment.)

The rational recitation that he was such an agent by a written act, raises not even a presumption in favor of such agency, which is not rebutted by the failure to produce or account for the document which would establish the trust.

Shepperd was a necessary and proper party, because a verdict in favor of the defendants would be no bar to an action by Shepperd or his heirs. The personal description of "Shepperd, agent of Franklin," would not show an outstanding title in Franklin,

so as to defeat Shepperd. It is purely a matter of personal description. Therefore the plaintiffs showed no right in their ancestor, and have no standing in the record to recover upon the strength of their own title.

To the question whether the plaintiffs are entitled as heirs of the forced heirs of Franklin, there are several answers. 1. The will having been probated by courts of competent jurisdiction, the judgment stands in the way of recovery, except a direct suit was brought to set aside the will. The point cannot be reached collaterally in this way.

Let us then examine the will itself, and the claims of the parties as forced heirs. While it is admitted as a general proposition that the *lex loci rei sitæ* governs as to the ownership, alienation and transmission of real estate, and that movables pass according to the law of the domicil of an intestate, it yet by no means follows that the children, who neither themselves nor their parents were domiciliated in Texas, are entitled to the benefits of the law of forced heirship. The proposition that Franklin, who was domiciliated in Tennessee, cannot devise his real estate in Texas, because of the law of forced heirship, would be exceedingly hard to maintain. (Britton v. Richardson, 3 La. R., 78.)

The case of Adalicia Acklin and Emma Franklin v. J. W. Franklin et al., Trustees, &c., 7 Annual Rep., 407, was a suit, first, to annul the various acts of Adalicia by which she had renounced her interest in the community of her husband, claiming that his domicil was in Louisiana, for that was necessary to support her claim. She also claimed as heir of her two children who died in 1846, and alleged that the trust was contrary to the laws of Louisiana. Emma also alleged the last ground. The defence was that Franklin was domiciliated in Tennessee, and hence she had no community of the property in Louisiana, and also the estoppels by the acts of Adalicia. Upon the facts, the court found that Franklin was not domiciliated in Louisiana, but in Tennessee, his native domicil, and therefore there was no interest in the community. The court also found the will to be such a trust as was in violation of the laws of Louisiana. The compromises of Adalicia were held to be binding upon her as to her com-

munity, but she recovered as heir 19-96th parts in her own right, and Emma recovered the balance.

The judgment turned, not upon the law of forced heirship, but upon the fact that the acts of conveyance by Mrs. Franklin were as void as the will itself—that the corporation could not so take.

The decision is in our favor as concerns the question of community and forced heirship, and as to the acts of renunciation; therefore the Texas property passed by these acts of renunciation, unless there be something in the law of Texas to prohibit the creation of the trust for the benefit of the Franklin Institute.

*Hewitt & Newton,* for J. L. Hewitt and other defendants.

*Joseph D. Wade,* for the intervenors.—The judgment of the court *a quo,* upon the verdict of the jury in favor of plaintiffs and intervenors, was that the plaintiffs and intervenors recover three-fourths of the land sued for, or three-eighths of the land described in plaintiff's original petition—they only claiming one-half of the land described in the original petition. This judgment is complained of by appellants, Paschal and wife. And while discussing this assignment by appellants, I will also consider an assignment of error by appellees, viz: "That the court erred in sustaining the will of Isaac Franklin, in sustaining the clause which contained a devise to charity, and in deciding that said will had reference to or disposed of lands in the State of Texas."

It is contended by appellants that the latter part of the clause which contains a devise to charity, and which is descriptive of the property conveyed, disposes of the lands in Texas to charity; and thereby divests the title to said lands out of the heirs of I. Franklin, the testator, and vests it in the trustees of said charity. The clause referred to is in substance as follows: "The revenues arising from my property in the States of Tennessee, Mississippi, or any other common law State where trust estates can be created, is to be appropriated by my trustees aforesaid to the erection and endowment of an academy that is to be established in the county of Sumner, State of Tennessee, for the purpose of having edu-

cated and clothed the children of myself, my brothers and sisters, and their descendants forever, and such deserving poor of said county as may be selected by my trustees." In construing this clause the court will take into consideration the fact that this will was written in the year 1841, while Texas was yet a republic, and four years before it became a member or State of this Union.

The term "common law State" is to be construed in connection with the names Mississippi and Tennessee. These enumerations make it very evident that the testator intended to limit the meaning of this general term, and make it have application only to the States of the American Union.

And according to the well known rule of construction of wills, that the meaning and definition of a term at the time of its use and adoption by the testator is to be attached to it, in the construction of the will, this term, "or any other common law State," cannot have reference to or include the State of Texas, because at the time of its adoption Texas was not a common law State, according to the definition given it by the testator. And a further reason for supposing that the testator did not intend to dispose of lands in Texas, appears in the fact that, at the time of making this will, he was an alien to the Republic of Texas, and was incompetent to dispose of lands situated within its limits by devise. And his legal advisers informed him of his legal incapacity. For these reasons I do not think the testator intended to devise the lands or revenues arising therefrom, situated in Texas, to charity. And I think the court erred in deciding that they were devised to charity.

But concede for the sake of argument that the clause referred to does have reference to lands in Texas. Then I will make this point, that it is not a valid devise to charity. And I will preface my argument upon this point by stating that because this clause has been adjudged to be a valid devise to charity in a sister State, is no reason why it should be recognized as valid here. The policy of the two States may be in direct contravention of each other. And as we are just shaping our policy upon the subject of charitable devises, would it not be wise in us to incorporate into our system of jurisprudence the wisdom of the countries of the

old world, gleaned from experience, so that in future it would not be necessary to retrace any step that may have been taken.

A cursory view of the law upon the subject of charitable devises will discover an entire change in the principles and policy of the law since the right to devise to charitable uses was first recognized. When the right was first given to man, by any jurisprudence that had its origin in or since the dark ages, to dispose of his property by will, he had the unrestrained right to devise it to charity. But time has proven this extensive and absolute right to be in contravention of the welfare of States, and therefore it has been gradually lessened. And at present in England it is altogether taken away, unless the will that contains the devise to charity is written at least twelve months, and recorded in a specified manner at least six months, before the death of the testator, and the devisee is to take possession of the property devised at the time of recording. So that it is a conveyance *inter vivos*. These regulations and principles governing in devises to charity, are established by statute of mortmain, enacted in 9th year George II, about a century ago; and I contend that this statute is in force in Texas, as a part of the common law of the land. What constitutes our common law? This question may be answered by quoting Chancellor Kent's definition of the common law: "But though the great body of the common law consists of a collection of principles, to be found in the opinion of sages, or deduced from universal usage, and receiving progressively the sanction of the courts." It is also the established doctrine that all English statutes, passed before the emigration of our ancestors, and applicable to our situation, and in amendment of the common law, constitute a part of the common law of this country. (1st Kent's Comm., 472, 473; 5 Pet., 241; 1 Bald., 559; 1 Mass., 61; 18 Id., 354; 1 Dar., 67; 8 Pick., 309; 9 Id., 532; 3 Green., 162; 6 Green., 55.)

The current of decisions in the old States of the Union is to the effect that all English statutes passed previous to 1776, and suitable to their condition, are part of the common law of the land. By parity of reasoning, it may be alleged that all English statutes enacted previous to 1840, the time of the adoption of the

common law in Texas, and suitable to our condition, are a part of the common law of Texas. The statute of mortmain (9th George II,) was enacted nearly a century before the adoption of the common law, and it is not unsuitable to our condition, nor in contravention of our policy. Is it not then a part of our common law? By the third section of the bill of rights of Maryland it is declared that inhabitants of that State are entitled to all rights accruing under the common law. In the case of Buchanan v. State of Maryland, it was decided that this section referred to the common law in mass, as it prevailed in England, at the time of the adoption of said bill of rights. (5 Har. & J., 358.) This decision sustains the position that the common law, as defined by Chancellor Kent, was adopted here as it existed in 1840.

If this can be made a charity at all, it can only be made so by virtue of the provisions of the statute, 43d Elizabeth, an English statute. And not all of this latter statute, if any part of it, has been adopted here, but only such portion of it as is adapted to our condition, that part of the statute which could only be enforced by a monarchical government having been passed over—evincing the capacity of the common law to cull from the statutes such provisions only as is adapted to its locality and condition.

But if this devise to charity is not obnoxious to the statute of mortmain, then appellees contend that the clause, abstractly considered, is invalid. It is a principle of law that if the amount devised to charity is uncertain, or is of such a nature as to be incapable of being reduced to a certainty, that the devise is void. In Bouv. Institutes, p. 263, an entirely analogous case to this is referred to: "there a devise of so much of an estate was made to an individual, the residue to charity." The first devise failed, and suit having been instituted to recover the amount devised to charity, it was decided that the first devise having failed, there was no means left by which to determine the amount devised to charity; therefore, the latter must fail, because of the uncertainty of the amount devised to charity. That part of the devise to charity, by Franklin, which related to property in Louisiana, having failed, it is impossible to ascertain the amount originally

devised to charity; therefore the whole devise must fail for uncertainty of amount.

The devise to charity is further objectionable because it is for family purposes. It is laid down in Jar. on Wills, 1st vol., top p. 230: "The repairing of a vault or tomb containing the testator's remains, is not a charitable use; contra, it seems, if the vault is to be used for the interment of the testator's family." Now this devise is intended for the benefit of the testator's family, and families of his brothers and sisters forever, bringing it within the principle above laid down.

But in reply to this, it may be said that it includes the poor of Sumner county, Tennessee. But if the court will observe this clause closely it will be seen that the poor of said county are secondary objects. They are not beneficiaries certainly provided for, but they are on the contingent list. The will says, if there be any revenue remaining after the education of my children and the children of my brothers and sisters, and their descendants forever, then such poor children as my trustees may select, of unexceptionable character, are to be educated. Here are three contingencies to happen before the poor are to become beneficiaries: excess of revenue, unexceptionable character, and selection by said trustees. The poor are not only secondary objects, but it is left entirely in the discretion of the trustees, who are relatives, and are to reap benefits from this school, and whose interest it will be to keep poor children out of this institution, to decide whether the poor shall be admitted into this aristocratic institution or not. And the discretion given to these trustees is of such a nature that no court of chancery can compel its exercise. Then can it be said that the poor are beneficiaries under this will? I think not. It appears that the last part of the clause to charity was annexed for the purpose of gilding and making good the remainder, and not that real love for the poor dictated it. Then if the latter part of the clause is bad, then the whole is void, upon the principle that all the members of a clause in a will must stand or fall together.

It is bad, because it is for a private charity and not for a general public good or use. It is private, because it is not to be applied for the benefit of the public generally, but for the benefit of

a particular favored family. And as such it cannot be regarded as a charity. The discretion given to the trustees in the latter part of the clause, to select poor children or not, vitiates it. There is a very great distinction between this case and those devises in charity that have been sustained.

In the cases of Girard and McDonough, the devises were to the poor of such cities, absolutely, without any contingencies, and no discretion given to the trustees as to whether the poor are to receive a benefit or not; there was no uncertainty. But in this case it may safely be asserted that the possibility that the poor will ever be benefited is too remote to be good, or sustain a devise.

The most important characteristic of a charitable devise is, that the beneficiaries are so entirely unknown that suit cannot be brought by them to require the trustees or directors of the trust to appropriate to them any part of the fund devised to charity. In this case the beneficiaries are not uncertain; the children of Franklin and his brothers and sisters, and their descendants, can compel the trustees to admit them as scholars in this institution. The beneficiaries being known, it determines the devise to be a private trust and not a public charity. And being a private trust, to sustain it would be to establish a perpetuity.

If the devise was ever good, has it not lapsed by the failure of the trustees to come forward and claim the land in Texas? It has been thirteen years since the death of Franklin, and yet the trustees have not done anything to secure this property for their institution.

The question of forced heirship was properly decided by the court a quo.

We ask for a reformation of the judgment in this court.

*N. O. Green*, for Acklin and wife.—We contend that Isaac Franklin died intestate as to his property in Texas. There is no clause in his will which disposes of the property in this State. The expression, " and other property in Tennessee and Mississippi and other common law States," cannot be construed to mean a disposition of lands in Texas. Texas was not then a State of the Union, nor can it be said that it was even a common law country

in the meaning of the testator. Texas had recently revolutionized from Mexico, and prior to the Declaration of Independence had been a civil law country. We think the naming of the States of Tennessee and Mississippi by the testator, was fixing the meaning of the term common law States. Texas could not then, in 1841, nor can she now, be said to be a common law State, as Tennessee and Mississippi are said to be common law States. It is obvious from the expression used, and the connection in which this clause of the will is found, that it has no reference to the lands of the testator in Texas. In no single instance, are the lands in Texas referred to specifically, or by any expression that would satisfy the mind that they were meant. The will is a long one, and seems to have been written with great particularity; every other species of property owned by the testator, is spoken of and mentioned specifically. His property situated in Louisiana, Tennessee and Mississippi, is specially mentioned and disposed of. The testator doubtless supposed that "trust estates," such as he proposed to create, were contrary to the law as it then was in Texas. Texas was then known as a civil law country, or rather a country controlled by the laws of Mexico. But another and far more difficult objection to the admission in evidence of this will, may be taken in this cause.

It will be seen by reference to the terms of this will, that the devise to the testator's brothers for the establishment of a literary institution in Tennessee, creates a perpetuity in the title to real estate in Texas, (if indeed the property of the testator situated in Texas is included in the devise for that purpose,) so as to render the same inalienable forever. It will, we presume, not be denied that the language of the will has created a perpetuity, nor will it be denied that such was the intention of the testator. The bequest cannot, by any reasonable or ordinary construction, be called a bequest for a public charity

The legal title to the estate is given to the brothers of the testator for the purpose of establishing in Sumner county, a school or institution of learning, for the education of the children and descendants of the testator and his brothers, and such of the poor children of Sumner county, Tennessee, who may be of unexcep-

tionable character, and such as his brothers might select, and the revenues arising from the bequest should be sufficient to educate, board and clothe, after educating, boarding and clothing the children of the testator, and those of his brothers and sisters. The poor children of Sumner county, Tennessee, are a secondary object of this bequest. It is not such a bequest as would enable any of the poor children of Sumner county to have it enforced for their benefit in the courts of Tennessee. It is left entirely with trustees who are beneficiaries under the will, to extend this so called charity to the poor children or not, as they might choose. The language of the will plainly gives the legal title to the two brothers of the testator, to hold in trust for the education of their own and the testator's children and their descendants. So far, this is the veriest perpetuity and estate tail possible, and the words which follow and are supposed to create the charity, are as follows: "And if the revenues should be sufficient therefor, I also wish such of the poor children of said county of Sumner, of unexceptionable character, *and such* as said trustees shall select, should likewise be educated and supported during the time," &c.

Now we think the poor children of Sumner county are only provided for on two contingencies, even if they were found of unexceptionable character. The first is, if the revenues shall be found sufficient, after providing for the children and their descendants, of the testator, and his brothers and sisters; and the second is, that the trustees should select them. It is plain that the trustees hold a mere power to select poor children and educate them out of this fund. But a power and a duty are wholly different things in a court of justice. The one can be enforced, while the other cannot. We think that we may safely affirm, that as to the charity part of this devise, only a power has been conferred, and not such a trust or duty as could be enforced in a court of justice. The bequest in this will does not come within the meaning of public charity. It is an attempt to tie up forever from the ordinary channels of commerce a large amount of property in this State, for the purpose of establishing a school for the education and support of one family in another and different State. The Supreme Court of Louisiana has adjudicated this bequest,

and held it void. (See 7th Louisiana Annual Reports, 395.) We think this is such a perpetuity as comes within the meaning of our constitution. Art. 1st, Sec. 18, is as follows: "Perpetuities and monopolies are contrary to the genius of a free government, and shall never be allowed; nor shall the law of primogeniture or entailments ever be in force in this State." Is not this bequest a perpetuity, and is it not such an entailment as is prohibited? It is the devise of property by the testator for the benefit of his children and their descendants, and for the children and descendants of his own immediate family, in trust forever, thus rendering it inalienable by them. Only the revenues arising out of the property, are allowed to be used. The objects of the testator's bounty are special, not to a particular class, but to particular persons. We think, on these several grounds the court below erred in admitting and in giving effect to the copy purporting to be the will of Isaac Franklin, and that this court can and will reform the decree of the court below, and will decree to plaintiffs and intervenors the one-half of the property described in their petition and claimed in their amended petition.

MOORE, J.—The judgment in this case must necessarily be reversed. The verdict is defective in respect to a material issue, upon which the plaintiff's right to a recovery in part depended. The plaintiff, Mrs. Acklin, claims the property in controversy as the surviving mother and an heir of the children and heirs of her former husband, Isaac Franklin. Although this fact is put in issue by the pleadings, yet the necessity of the jury passing upon it seems, in the hurry of business in the District Court, to have been overlooked. In remanding the case, however, it will be proper to express the conclusions at which the court have arrived upon the questions that are involved in its final determination.

It is not necessary to determine whether the parol evidence of title offered by the plaintiffs would have been sufficient, of itself, to have entitled them to a recovery. At the date of the sales, in proof of which the testimony was offered, a parol sale was as valid and effectual to pass the title of land as a conveyance in writing, if possession of the land accompanied the sale. Whether all of the

different parties who purchased the lot by parol took such actual possession as was necessary to the validity of their contracts, need not be discussed. The evidence before the court shows that both parties claim the lot under and through Pleasant Branch Cocke; and the subsequent links in the plaintiffs' chain of title were not defective in this particular. It is a well established rule, in actions involving the title of land, that a plaintiff need not deraign title beyond the common source under which he and the defendant claim.

The appellants, who were the defendants in the court below, insist that the effect of the deed from Cocke, under which the plaintiffs claimed, was to pass the legal title to the lot to Shepperd. And although it may have been the intention that he should hold the lot as the agent and in trust for Franklin; yet, as the latter was an alien the trust was illegal, and he did not therefore acquire even an equitable right to the lot. The appellants have mistaken the import of the deed. It is not a conveyance to Shepperd as the agent of Franklin, but the title is made directly to the latter, who merely contracts and purchases by his agent and attorney in fact, Shepperd.

Appellants have also insisted, but without the slightest foundation upon principle or authority, that as the proof upon which Franklin's will was admitted to probate in the State of Louisiana, would have authorized its admission to probate in this State, a certified copy of it from the records of the proper court in that State might, by virtue of the act of congress giving full faith and credit to the records and proceedings of the courts of each State of the Confederacy in those of the other States, be used in the courts here as a muniment of title, without the probate of the will in this State. This position is in direct contravention to the elementary doctrine in the law of real property, that the title to land can only be affected by the *lex loci rei sitæ*. The records, judgments and proceedings of the courts in one State can, in no particular, or under any circumstances, affect or pass the title of land situated in another. When courts of equity have jurisdiction of the person, they may compel a party to convey lands beyond their juris-

diction; but, in all such cases, it is the act of the party, and not the decree of the court, which effects the title.

This question, however, in the view taken of the case, is unimportant, and would not have been adverted to, but for the fact that it was insisted upon by counsel with much assiduity. Upon the copy of the will offered in evidence, was indorsed an agreement by the counsel of the appellees, that they waived its filing and record. It might be urged, with some plausibility, that this agreement does not waive or admit the probate of the will. But on an application for its probate, its execution need not have been proved; and the only order that the court could have made with reference to it, would have been, that it should be "filed and recorded." (Hart. Dig., art. 1114.) It would seem, then, to be but a fair construction to give to this agreement, to hold that it, in effect, admits that the preliminary steps had been taken, which alone would have authorized its filing and record. And this the counsel for both parties say was the object and intention of the agreement, and the construction they wished to see placed upon it by the court.

The will being properly before the court, its construction gives rise to several questions, some of which are of great importance and much difficulty. The first of these, and that of most ready solution is, did the testator, Franklin, by his will, devise his land situated in the Republic of Texas, which was as to him at that time, a foreign government? In the first clause of the eighth item of his will, he says: "I give and bequeath all my property, real and personal, of whatever kind or nature, that is situated in the States of Tennessee and Mississippi, or in any other common law State, where trust estates can be created," &c. The leading object in the construction of wills is, to ascertain and give effect to the intention of the testator, and, guided by this rule, there can be but little doubt in concluding that the testator's lands in Texas were devised by his will. His manifest intention was to convey all his property by this clause of his will, that was situated where by law trust estates, such as he was providing for in his will, could be created; and the phraseology of the sentence makes it manifest, that he supposed that this could be done in common law States. In Texas trust estates could be created; the common law was in

13*

force; and although not then one of the States of the American Union, it was, in a technical and legal sense, a common law State. It would be unreasonable to conclude that by "other common law States," only the other States of the Union besides those named were referred to, in none of which does it appear that he had property; and that he should have left the large amount of land, which ultimately, for the purposes of his will, must be very valuable, undisposed of, although there was nothing to prevent his doing so, in the manner and for the purpose for which he evidently wished to dispose of all of his property, except that embraced in 'the special bequests in his will. If there could be any doubt about it, it is certainly removed by the still stronger and broader language subsequently used in the same item of the will, in which he makes the devise extend to all "the rest and residue of his estate wherever situated."

It is also insisted by the appellees, and was so ruled in the District Court, that Isaac Franklin's will is inoperative and void in this State, to the extent of three fourths of his estate, because, as they allege, it contravenes the provisions of our former statute of wills, which forbid a parent depriving his children by will of more than one-fourth of his estate. To this appellants reply, that this provision of the statute is not applicable to the wills of non-residents, unless their children are citizens. But no satisfactory reason has been given, upon which such a distinction can be rested. It has never been questioned, that the right to dispose of property conferred by the statute, extends equally to residents and non-residents. Why, then, shall we conclude that the limitation upon this right, as to the one class of testators, is not equally applicable to the other? At the time of the enactment of this law, the legislature deemed that sound policy required that the unlimited power of the owner of property to dispose of it by will, should be to some extent limited in favor of children. It was surely not the intention of our law-makers to confer upon non-residents a more enlarged privilege of disposing of their property, than it was thought fit should be enjoyed by our own citizens.

On the other hand, the position assumed by appellants, that the court, in applying this statute to the will, can only take into view

the property of the testator situated in this State, is equally falla-
cious.    The only limitation upon the right of the owner to dispose
of his property by will has reference to the proportional part of
the value of his estate.    In other respects, his discretion is un-
shackled.    The authority to dispose of his property by will is
general; the limitation or qualification of this right is special and
particular.    In the nature of things, it is impossible that a part of
each specific article of property should be allotted to the children.
To deprive the testator of the privilege of selecting the item of
property for bequest, would often, if not generally, take from him
the incentive for making it.    The object of the law was to secure
to children a just and reasonable portion of their parents' estate.
If they received the portion to which the law declared they were
entitled, it was immaterial where or in what they received it.    It
is not to be understood from this, that there may not be cases
in which our courts would refuse to send our citizens abroad, to en-
counter difficulties and uncertainties in obtaining their portion of
their parents' estate in a foreign tribunal, to enable the devisees or
legatees to secure the full amount of their bequests here.    The
question presented in this case is, can the children, or those claiming
under them, if they have already received their legitimate portion
of the entire estate, claim a like proportional part of the property
in this State, simply because the portion which they have received
was not within its limits, or within the jurisdiction, or under the
control of, our courts?    To answer in the affirmative would be to
give the statute in question a construction altogether foreign to its
spirit and purpose, as well as to violate a fundamental principal in
this department of jurisprudence.    A party will not be permitted
to take under, and at the same time adversely to, a will.    (1 Jar-
mon on Wills, 385.)    Whether the children of Franklin, or those
now claiming in right of them, have received the proportion of his
estate to which they were entitled under our statute in force at
the time of his death, is a question of fact which we need not at
present discuss.    If this can be done in the attitude in which this
cause was presented in the court below, the evidence offered to the
court was insufficient to enable it to dispose of the case consistently

with the respective rights of the parties.   The verdict of the jury
is, in this particular, altogether defective.

There appears, however, a still more serious difficulty in the ap-
pellees recovering the property, in opposition to the bequest of the
will, by their present suit.   A will is not void because the testator
may have attempted to bequeath more than the disposable portion
of his estate; it is only voidable to the extent of the excess.   The
agreement to waive the filing and recording of the will must be con-
strued, as has been said, as an admission that it stands before the
court as properly probated.  This being the case, to raise the question
of its validity, in the present suit, would be to attack it in a col-
lateral proceeding.   The will, when admitted to probate, is pre-
sumptively valid and good.   It remains so until its invalidity is
established in a direct proceeding between the proper parties in
the proper tribunal.  (Hodder v. Shepperd, 1 La., 184; Miller
v. Andrews, 1 La., Annl., 237.)

There remains but one other question that need be discussed.
Appellees' counsel have maintained, in an argument of much zeal
and cogency, that the special bequest in Franklin's will in favor
of his brothers, upon the trusts therein declared, is in violation of
our constitutional prohibition of perpetuities and entailments; and
that the court must, therefore, hold it illegal and void.   The solu-
tion of this question depends upon the fact, whether the devise in
question can be sustained as a bequest for charitable uses.   If so, it
must be conceded, that it does not come within the constitutional
inhibition referred to.   (See Griffin v. Graham, 1 Hawks, 96;
The State v. McGown, 2 Iredell's Eq. R., 9; Bell County v.
Alexander, 22 Tex., 350.)   Otherwise it would result that neither
churches, schools, societies, or corporations, intended for the public
good, could be endowed or maintained in usefulness beyond a lim-
ited period.

The leading objections that have been urged against this be-
quest are : first, that the trust is in favor of the issue of the tes-
tator and his brothers and sisters, who are so specifically and
certainly designated that it must be held to be a gift, and not
a charity, the essence of which is uncertainty of beneficiaries.
Second, the leading object of the will is to make provision for the

education of the descendants of the testator and his brothers and sisters. That the provision in favor of the poor of Sumner county is contingent and incidental, and that a provision of this sort for one's own family, is not a charitable use. Third, if the trust should be construed to be in favor of the academy or seminary to be on the Fairview plantation, it must fail, there being no *cestui que trust* in existence at the testator's death, in whose favor it could be executed.

If bequests for charitable uses have been the means of much social good, they are certainly chargeable with great countervailing evils, and have often been the source of great corruption and abuse. They have, perhaps, more frequently proved the subject of protracted, wasting and perplexing litigation, than of public utility or the successful means of accomplishing the objects of their donors. If the laws and the decisions of the courts by which they are upheld and sustained, had not long since become firmly incorporated into our judicial system, much might, and undoubtedly would be urged against both the policy and propriety of doing so. It may, perhaps, also with truth be said that this doctrine presents one among a number of instances which might be enumerated, in which the courts have by precedent upon precedent, engrafted into our jurisprudence principles and doctrines which have no legislative authority to sustain them, if in fact they are not frequently repugnant to it. And although at a later day their policy and legality may be questioned, doubted or denied, yet so firmly have they become fixed, each new occasion that furnishes an opportunity for questioning them, furnishes a precedent for sustaining them. They have their origin generally, no doubt, in impulses and feelings that permeate society, or from the passions or sentiments, whether for good or ill, which find a response in almost every bosom. It cannot be questioned that one of the strongest and most universal of these sentiments, by which all men seem actuated, is the desire in some way or other to perpetuate our names or connect ourselves with posterity. It stimulates the patriot to noble deeds in the senate and the field; even the child wants some memorial to mark his grave that it may not be forgotten. With one it leads to entail-

ments and family settlements; others would make the hoarded treasures of their life a fountain of charity for all future time; and while the former of these feelings has been reprobated and forbidden because selfish and injurious to the public, the latter, for the contrary reasons, has been upheld and maintained, at least by the courts.

The two first objections to the bequest, present substantially the same question. They differ rather in the manner of stating the objection, than in bringing before us distinct legal propositions. Uncertainty of individual object has often been said to be a characteristic of charity, and if the beneficiary is certain it is a gift and not a charity. This must be understood, however, to some extent as referring to certainty of individuals, to whom as such the bequest is made, and not to certainty of a class of individuals from whom the beneficiaries shall come. In determining whether the bequest in question is a mere gift, or a charitable use, it is necessary to ascertain the intention of the testator. Was the purpose of the will to make simply a provision for the education of his own descendants, and those of his brothers and sisters, or was it for the endowment of an institution of learning for all time, where these persons as a class might have preference, and, if the fund was sufficient, then the poor of Sumner county? When we look at the will there can be but little doubt that the latter was its object. The amount of the donation, the manner of its administration, the time and circumstances under which the academy was to go into operation; the ample provision otherwise made for the support and education of his children; the solemn appeal to them to aid in carrying his design into effect; the means provided for selecting the children who could be educated; in short, every provision of the will points manifestly to the fact that the leading object of the testator's life had doubtless been to acquire a fund to endow a charitable institution of learning. For this he had, early and late, toiled and plodded many a weary day and night; for this he had hoarded and accumulated the splendid fortune which he had amassed during a long and successful life; and for this he had charged his executors with the duty of still further accumulations. While the children who were to be educated were the

beneficiaries, they were to have no interest in or control over the property.  In the course of time the descendants of his brothers and sisters might become so numerous that all of them  could not be educated, and it would be uncertain who of them would be selected.  If all could be received, it was uncertain who of them would submit to the conditions imposed.  There is no difference in the interest conferred on those, and on such poor children as might also be received.  The beneficiaries are also uncertain, by reason of the continued fluctuations of  those who are to be its recipients.

Nor does the fact that a preference is  given to persons of the blood of the testator, take from the  bequest the character of a charity.  In the case of the Attorney General v. Price, 17 Ves. Rep., 371, it was held that a  "devise to A. and his heirs, with direction that yearly he and his heirs shall forever divide and distribute, according to his and their direction, amongst the testator's poor kinsmen and kinswomen, their offspring and issue dwelling in the county of B., twenty pounds by the year," was a good charitable devise.  (See also Andrews. v. The General Theological Seminary of the Protestant Episcopal Church, 4 Seld. N. Y. Rep., 559; White v. White, 7 Ves., 422.)

And although the relief of the poor, or a benefit to them in some way, is in its popular sense a necessary ingredient in a charity, this is not so in view of the law, by which it is defined to be "a gift to a general public use," which extends, or doubtless may do so, either to the rich or the poor.  (1 Bouv. L. D. Charity, 223.)  An institution of learning for the education of gentlemen's sons has been held a proper devise to charitable uses. (Attorney General v. Lord Lonsdale, 2 Eng. Ch. R., 105.)

Notwithstanding the strong and marked phraseology in that part of the will directing the erection of an academy or seminary for the education of the descendants of the testator, and of his brothers and sisters, it would be but a narrow and litteral construction of an isolated paragraph, without regard to the context, or the object and spirit of the testator as manifested by the entire body of the instrument, to conclude that his leading object was to make a provision for them.  When the will is looked to as

an entirety, it will be readily seen that while the testator intended a preference to those of his blood, yet he looked to them merely as a class of persons from which the recipients of the charity might be selected; and if this class failed, or the fund should exceed their necessities, instructed by the author of all wisdom, that the poor we have always with us, he designed that his bounty should be a perpetual and enduring monument to his name, and of public use for the education of future generations, through all time to come. If the testator was actuated merely by the selfish purpose of advancing the descendants of his own blood, the record in this case admonishes us how vain and short sighted are all such hopes. Even before the limited period had elapsed which he deemed necessary for inaugurating the enterprise which he cherished with so much affection, a stranger occupied his bed, and children not of his loins inherited the property bequeathed to his own issue; and those who bear not his name, and in whose veins there flows not a drop of his blood, are now fighting for the remnant of the property which he designed as a bequest for charity, in preference to its bestowal upon his own family or friends.

It cannot be said that the bequest in favor of the poor of Sumner county, is too vague and uncertain a description of the beneficiaries to be sustained as a charity in our courts, where the English doctrine of *cy-pres* has never been recognized. Though this point may, at one time, have been a ground of much debate, it is now too firmly settled to admit of question. (See Bell county v. Alexander, 22 Tex., 350; Vidal v. Girard, 2 How., 56; McDonough v. Murdoch, 15 How., 367, and cases there cited.)

It is, also, said that the bequest is void because it was intended to operate in favor of an unincorporated institution; in fact, one that had, at the testator's death, only an imaginary and ideal existence in his brain. And to sustain this position, the case of the Baptist Association v. Hart, 4 Wheat, 1, has been referred to; but this case has, in subsequent decisions in the same high tribunal, been much questioned. But whatever may be its weight as an authority, it is not applicable to the case now before the court. The bequest in that case was directly to the unincorporated association; here it is to trustees, who are capable of taking the es-

tate.  In such cases it has been frequently held that the subsequent incorporation of the beneficiary of the trust, within a reasonable time, is sufficient to support and maintain the bequest. (See Milne v. Milne, 17 La., 54; Inglis v. The Sailors Snugharbor, 3 Pet., 112, and many cases to the same point are collected in the great argument of Mr. Binney, in support of the will of Stephen Girard.)

But without the aid of the subsequent incorporation of the "Franklin Institute," the trust was effectual in favor of the beneficiaries pointed out in the will.  It was supported by the bequest to trustees, and their execution of it could have been enforced by the beneficiaries in a court of equity. (See Williams v. Williams, 4 Seld., 525; Griffin v. Graham, 1 Hawks, 96 ; The State v. McGowen, 2 Ired., Eq. R., 9; Bartlett v. Nye, 4 Met., 378 ; Washburn v. Sewell, 9 Met., 280; Gibson v. McCall, 1 Rich., S. C., 174; Shotwell v. Mott, 2 Sandf., Ch. R., 46.)  In Moggridge v. Thackwell, 7 Ves. Jr., 36, it is said " when an ascertainable object is designated by the donor, in general or collective terms, as the poor of a given county or parish, or when a person is appointed by him to select a described portion, or kind, or number from a designated class, the chancellor, sitting as judge in equity, will interpose upon the ground of trust."    And in Moore v. Moore, 4 Dana, 354, it is said, "whenever the only objection to a bequest is that it is for the benefit of the persons described collectively by some characteristic trait, by which they may be identified; if the bequest is a charity within the statute, and therefore valid, it is as good and available as it would have been at common law, had it been to one competent person in trust for another, identified by the will."

Before closing this opinion, which we feel conscious has been protracted to much greater length than could have been desired, it is to proper to say, we have been much aided, as well as strengthened in the correctness of the conclusions at which we have arrived, by the very able and elaborate opinion of the Supreme Court of Tennessee, in the case of Franklin v. Armfield, 2 Sneed, 305, upon the identical will now before us.  And although in a litigation involving the same subject in the State of Louisi-

ana, (Acklin v. Acklin, 7 Annl., 395,) the trust in the will was held illegal, this seems to have been rather on account of the peculiar and stringent provisions of the code of that State against trusts. But even in this respect, the weight of the authority of that case is, to some extent, shaken by the learned and elaborate opinion of the distinguished and lamented associate justice, Preston, who dissented from the majority of the court.

The judgment is reversed and the cause remanded.

Reversed and remanded.