MILLIE POWERS ET AL V. FIRST NATIONAL BANK OF
CORSICANA, TEXAS, EXECUTOR, ET AL.

No. 7799. Decided March 18, 1942.
Rehearing overruled April 22, 1942.
(161 S. W., 2d Series, 273.)

*Burns & Hadsell,* of Niles, Michigan, *Samuels, Foster, Brown, & McGee* and *Cantey, Hanger, McMahon, McKnight & Johnson,* of Fort Worth, for plaintiffs in error

It was error for the Court of Civil Appeals to construe the will of the deceased to limit the trustee's powers to the four general objects of charity: (1) the relief of poverity, the object to be selected by the trustee; (2) the support of the Presbyterian church at Corsicana, including permanent improvements; (3) the support of the Reynolds Orphanage, with possible permanent improvements; and (4) loans to ambitious and worthy boys and girls, to be selected by the trustee, and who otherwise would be unable to secure an education, because said will is not susceptible of such construction, as the clear import of the will authorizes the trustee appointed thereunder to expend the trust fund or income therefrom for worthy objects of charity to be selected by the trustee without restriction or limitation. Lightfoot v. Poindexter 119 S. W. 1152; Tilden v.

Green 130 N. Y. 29, 28 N. E. 880, 14 L. R. A. 33. 37 Am. St. Rep. 487; 44 Tex. Jur., 677.

*Taylor & McWilliams* and *Richard and A. P. Mays*, all of Corsicana, for defendants in error.

The will of Mrs. Hofstetter demonstrates that she did not desire to die intestate, because she expressly designated the bank as her trustee, and by her express bequests showed an intention as to how she wanted her property divided, and in construing said will the court should look to the language of the testator to arrive at his or her true intention, regardless of the technical rules of punctuation which might create an ambiguity, in which case the court should look to the meaning of words rather than to lack of commas and other points of punctuation, for the real intention of the testator. Citizen Natl. Bank of Abilene v. Texas & Pac. Ry. Co. 136 Texas 333, 150 S. W. (2d) 1003; Catalani v. Graneri, 153 S. W. (2d) 1015; Hassell v. Frey, 131 Texas 578, 117 S. W. (2d) 413.

*Watkins & Mays* and *Ross B. Lea*, all of Dallas, *Lawrence Treatwell, Chris L. Knox* and *J. S. Callicutt*, all of Corsicana, filed brief for intervenors, Third Avenue Presbyterian Church of Corsicana, and Reynold's Presbyterian Orphanage and School, at Dallas.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit by Millie Powers and thirty-six other residents of Canada, Michigan, Illinois, Ohio, Nebraska and Missouri, describing themselves as cousins and heirs at law of Bessie I. Hofstetter, deceased, and suing "on behalf of all other heirs of the said Bessie I. Hofstetter, deceased, similarly situated, and for the use and benefit of such class, * * a large number of whom reside outside of the United States," in which the plaintiffs seek to "annul and suspend" the provisions of the will of said Bessie I. Hofstetter, deceased, which has been admitted to probate by the County Court of Navarro County, Texas. The First National Bank of Corsicana, executor of the will, was named as defendant. Third Avenue Presbyterian Church of the United States of America at Corsicana, Texas, and Reynold's Presbyterian Orphanage and School, a corporation, devisees, intervened in behalf of the will, and are named as defendants in plaintiffs' second amended original petition.

Plaintiffs' attack is directed primarily at paragraph 4, 5 and 6, of said will, which are as follows:

"FOURTH:

"After the payment of debts and expenses enumerated in items two and three next above, and the expense of probating this will, I hereby will and bequeath and devise unto The First National Bank of Corsicana, Texas, a banking corporation organized under the Federal Banking Act of the United States of America, in trust for the purposes hereinafter stipulated, all of the property of which I may die seized and possessed including real, personal and mixed property, and property of every kind and description, whether in my possession or held in trust for me; and it is my will and my desire that the Trustee aforesaid, shall have the entire management and control of all of said property; and I hereby grant unto said Trustee full power and authority to sell and convey the same, to invest, and reinvest the proceeds thereof from time to time, and to pay all reasonable charges and expenses in connection with the handling, managing, preserving, defending, recovering, caring for, controlling and selling said property, including a fee of _____ upon the gross income derived from said properties to be retained out of said income by the Trustee in full compensation for its service hereunder.

"No bond or other security shall be required of the Trustee herein, in addition to the obligations and requirements imposed upon National Banks under the Federal Banking Laws and amendments thereto authorizing acceptance of trusts by said Banks.

"FIFTH:

"The Trustee, aforesaid, and its successors shall hold said property hereby devised and bequeathed to it in trust as a permanent charity fund and shall invest and reinvest same in revenue bearing real estate or interest bearing securities or in State, County, City or Road District bonds yielding the best rate of interest consistent with the safety of the fund or said fund may be loaned to any National Banking Institution at a reasonable rate of interest in the discretion of the Trustee.

"SIXTH:

"The net income of the public charity fund herein and hereby vested in the Trustee herein shall be expended by the

Trustee for worthy objects of charity, including the support of the Christian religion as hereinafter indicated. The charity so dispensed in the relief of poverty shall be without regard to race, color, sex or religious belief, and shall be distributed from time to time in the judgment and discretion of the Trustee; the objects of such charity to be selected by the Trustee. The said Trustee is further authorized and directed to pay out of the income of said trust a reasonable amount annually for the support of the Presbyterian Church of the United States of America at Corsicana, Texas, commonly known as the Third Avenue Presbyterian Church, and also to pay annually a reasonable amount to the Board of Trustees of Reynold's orphanage at Dallas, Dallas County, Texas, said orphanage being conducted under the auspices of the Presbyterian Church of the United States of America. And if in the judgment of the Trustee the income from said Trust shall warrant, said Trustee may make contributions from such income to the above named church and orphanage for permanent improvements.

"The Trustee shall have the power and authority and is hereby directed, out of the income only, if in the judgment of the Trustee the income of the Trust is sufficient after the contributions above provided for, to make loans to ambitious and worthy boys and girls, who are financially unable to secure an eduction and would otherwise be deprived thereof. Such loans shall be in amounts and upon terms and conditions, and to such boys and girls that may be determined worthy thereof in the discretion of the Trustee, but without regard to residence of the recipients."

The plaintiffs lost in both the county probate court and the district court and upon appeal the judgment of the latter court was affirmed by the Court of Civil Appeals, at Waco. See 137 S. W. (2d) 839.

As we understand plaintiffs' pleadings and their several briefs, the grounds for their contention that the trust attempted to be set up by the aforsaid provisions is void may be grouped as follows: (1) it creates a perpetuity; (2) it is not made to public charity only, because it intermingles therewith provisions for a private trust; (3) the trust is personal in the trustee, in that the will vests in it a discretion as to objects, persons or classes to whom gifts shall be made; (4) the powers of the trustee, and the beneficiaries of the trust are so uncertain and the discretion of the trustee so unlimited that the trust

could not be administered by a court of equity nor could the attorney general prosecute a suit to enforce it; and (5) even if it should be conceded otherwise to create a public charity, the amounts, purpose and time for distribution of income to the church and orphanage are so uncertain that the two beneficiaries could not sue to enforce it.

By the quoted provisions of her will Mrs. Hofstetter clearly takes her estate out of the channels of trade and commerce for a period longer than a life or lives in being and twenty-one years plus the nine months of normal gestation. Therefore, the will creates a perpetuity, as contended by plaintiffs, and is void because it violates section 26, article 1, of the Constitution of Texas, unless it sets up a trust exclusively for public charities, in which event the constitutional restraint has no application. Paschal v. Acklin, 27 Texas, 173. So we shall first consider whether any of said provisions are for a private trust.

■ That a provision to relieve poverty is a public charity is not open to debate. That the hungry must be fed and the naked clothed has long been accepted by the civilized social conscience the world over. For some time and in many countries it has been recognized as an obligation attaching to the government itself to be discharged by public taxation. It is a duty that enlightened countries make every reasonable effort to perform. For example, while our Constitution says the Legislature can make no private grant of public moneys, it empowers that branch of the government to grant aid to indigent and disabled Confederate soldiers and sailors. Art. 3, sec. 51, Texas Const. During the widespread economic distress of the last decade a constitutional amendment was adopted by the people of Texas authorizing the Legislature to issue "Bread Bonds" in amount not to exceed twenty million dollars, the proceeds of the sale of which were "to be used in furnishing relief and work relief to needy and distressed people and in relieving the hardships resulting from unemployment." Art. 3, sec. 51a, ibid. This action the Legislature promptly took and twenty million dollars was spent, and the bonds are being liquidated from the State treasury. During the same era the Government of the United States poured out billions from the federal treasury to sustain millions of our poverty stricken citizens, the program being financed partly by current taxation and partly by unprecedented expansion of the national debt. The people cheerfully support such measures because the purpose served is vital and presents an undeniable appeal to every humane instinct of

civilized man. Instances might be multiplied but to no useful purpose. We hold that a gift for the relief of poverty generally, is a gift to a purely public charity because it relieves the whole citizenship of its burden to the extent of the gift. This is the rule announced by our Supreme Court in Bell County v. Alexander, 22 Texas, 350, 351, 73 Am. Dec. 268, and it has never been overruled or modified. Paschal v. Acklin, supra; 9 Tex. Jur. sec. 11, and authorities there cited; 14 C. J. S., sec. 16; 10 Am. Jur. sec. 52; Restatement of the Law of Trusts, vol. 2, sec. 369.

And we take occasion here to say that the fact that Mrs. Hofstetter did not see fit to restrain its application within defined geographical limits does not render the gift any the less a public charity. As admirably stated by the Supreme Court of Iowa in Grant v. Saunders, 121 Iowa 80, 95 N. W., 411, 100 Am. St. Rep. 310.

"If the testator saw fit to extend his charity beyond the limits of his own city or state, why should the courts say that he had no right so to do, and divert his property into other channels? During his life he could have given it to whom and wherever he chose. * * Why then, should we say that after his death his clearly expressed charity shall not be carried out because not limited to a certain locality, or to be dispensed within geographical lines approved by us or dictated by his heirs?"

We think the gift for the benefit of the Third Avenue Presbyterian Church of Corsicana is likewise a gift in aid of a public charity because it has been said that a trust for the promotion of religion is charitable although the religion to be promoted may not be the Christian religion. And a trust to promote a particular religious doctrine is charitable, although the doctrine is advocated by only a small portion of the community. Restatement of the Law of Trusts, vol. 2, sec. 371d. In this connection it will be remembered that in the United States we have never had limitations on gifts for religious purposes such as England once had in her prohibition of gifts to "superstitious uses," so called because made to religious bodies unrelated to the established church. So it is said that generally, it is not for the judiciary or the Legislature to strike down bequests for religious uses since to do so would necessarily infringe upon the great constitutional guaranty of perfect freedom and equality in all religions. Am. & Eng. Ency.

of Law, vol. III, p. 131. The statute of 43 Eliz. c. 4, known as the Statute of Charitable Uses, is regarded by many authorities as the principal test and evidence of what the law will consider charitable uses. It recognized gifts in support of public worship and religious instruction. Likewise the civil law, from which the English law of charities was apparently derived, regarded wills made for good and pious uses as privileged testaments. So in the United States since the Revolution no distinction has been made between charitable gifts for the benefit of different religious sects. Jackson v. Phillips (Mass.), 14 Allen, 539, 555. Because we recognize no distinction as between the several religious sects, Christian or otherwise, a gift to promote any one of them is deemed a charitable gift. Some such gifts have been held void but it was because of the uncertainty and indefiniteness of the language attempting to create the trust and not because the beneficiary was a religious sect. See Ryan v. Porter, 61 Texas 106; Community of Priests v. Byrne (Com. App.), 255 S. W. 601; 9 Tex. Jur., sec. 13; notes 1 to III, 22 A. L. R. pp. 697ff; and 2 Bogert, Trusts and Trustees, sec. 375. We think the rule is well stated in 10 American Jurisprudence, sec. 55, as follows:

"In a country like ours, where it is one of the canons of the political law that there shall be no established religion, and that government shall not actively participate in the support or dissemination of religion of any sort, all such societies—pious institutions of all sorts—must depend upon the eleemosynary contributions of individuals. This would seem to require that the law should esteem such contributions as in a peculiar degree charitable. Whenever the end is truly pious, the law must esteem donations to promote it as really charitable. It necessarily follows, therefore, that all gifts and grants in trust, for the support of public worship and religious instruction, or for the advancement of piety, are valid as charitable trusts, and will be carried into effect."

The cases are not in accord in our several jurisdictions as to whether a gift for the benefit of the orphans of members of a given fraternal order or church exclusively, is a gift to a public charity. No better statement of the contrary views, with supporting arguments and reviews of the authorities, can be found in the books than in the majority and minority opinions by the Supreme Court of Kansas in its "4-3" decision in the case of Troutman v. De Boissiere, etc., Ass'n, 66 Kan. 1, 71 Pac., 286, 292, 295. The majority opinion holds such a gift for the

benefit exclusively of orphans of Odd Fellows of the State of Kansas does not create a public charity for the reason that the public is under obligation to support its orphans not because they are children of deceased Odd Fellows but because they are fatherless. However, we find it unnecessary to decide that precise question in this case.

■ We think the gift to the Reynold's Presbyterian Orphanage and School is to a public charity because the wards of that institution are not exclusively Presbyterian. The record discloses that the institution was incorporated "to care for, nurture, educate and train into Christian manhood and womanhood the orphans and helpless children of the members of the Presbyterian churches of the United States of America, *and all such others as the trustees may determine.*" (Italics ours.) It further shows, from the undisputed testimony of a member of the board of trustees, that the trustees "are not controlled by church affiliation" in admitting children to the home, but that their discretion is directed in each case to the question of whether the child is worthy of admission. It is further disclosed, without dispute, that over a period of ten years thirty-nine of the children admitted were affiliated with the Presbyterian Church of the United States of America, two with the Presbyterian Church of the United States, twenty with the Baptist Church, nine with the Methodist Church, nine with the Pentecostal Church and two with the Catholic Church, while twelve were admitted under court orders as dependent and neglected children. Thus it appears that the orphanage is devoted to all orphans, regardless of religious affiliation. So, "looking either to the purpose for which" it was formed "or to the philanthropies which it practiced, it seems to fulfill the requirements just specified for an institution of purely public charity." City of Houston v. Scottish Rite Benev. Ass'n, 111 Texas 191, 230 S. W. 978. We are well aware, as counsel urge, that this case relates to tax exemptions extended to an institution of purely public charity, but we fail to see why the same reasoning cannot logically be applied to an orphans' home operated without private gain or corporate profit and exclusively devoted to material aid to helpless children. As said by Justice Greenwood, in the case last cited:

"Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or the state

* * *. It is to lose sight of actual results not to see the public benefits in reasonable provision for the needs of large and indefinite groups of individuals, no matter what may have been the basis, if lawful, on which the groups were formed."

See Benevolent P. O. E. v. City of Houston (Civ. App.), 44 S. W. (2d) 488 (er. ref.) ; City of Palestine v. M. P. Lines Hosp. Ass'n (Civ. App.), 99 S. W. (2d) 311 (er. ref.).

The orphan has always presented a strong appeal to charitable impulse. If there was ever any question in Texas as to whether an orphan, regardless of his race, color or creed and irrespective of what church or organization claimed the membership of his parents, has an undeniable claim to public charity, we think the same was set at rest by the adoption in 1937 of sec. 51d, Art. 3, of the Constitution, authorizing the Legislature to appropriate as much as one million five hundred thousand dollars per annum to provide financial assistance to destitute children under fourteen years of age, the necessary funds, of course, to be raised by taxation. Relief of destitute children has thus been declared to be a matter of fundamental public policy and obligation. It follows, therefore, that any gift designed to sustain and nurture an orphan tends to discharge a public obligation, to lighten the public burden and to lessen taxes the citizen must pay, because a vast majority of the orphans admitted to homes such as the one described in Mrs. Hofstetter's will are destitute, else they would not be there.

So why should it be said that a gift for relief of orphans of parents of a given religious persuasion is not a public charity, particularly when children of deceased parents not of such religious persuasion may be and are likewise recipients of such relief? It is the public duty to support all of them, so a gift to support some of them discharges a part of the public duty and should, therefore, be regarded as a public charity. This certainly would seem to be in accord with the generous spirit of our people as expressed in the aforesaid constitutional amendment. Indeed, private provision for a part of our dependent orphans enables the State to make better provision for the others; and as Stephen Girard said in his will, it might provide for the fortunate beneficiaries "a more comfortable maintenance than they usually receive from the application of the public funds." Vidal et al v. Girard's Executors, 2 How. 127, 11 L. Ed. 205. We hold that the gift to Reynold's Presbyterian Orphanage and School is one to a public charity be-

cause it aims to accomplish acts that are useful to the public in discharging its obligation to the orphan and that will lessen the financial burdens of the people. 9 Tex. Jur., sec. 11. See Banner et al v. Rolf et al 43 Texas Civ. App, 88, 94 S. W. 1125 (er. ref.).

■ At least since the enactment of the Statute of Charitable Uses (43 Eliz., supra), gifts to promote education have been considered charitable dispositions, and this includes the establishment of scholarships to assist students in acquiring an education. Restatement of the Law of Trusts, secs. 368, 370. More specifically, it has been held to include trusts to lend money to students, 2 Bogert, Law of Trusts and Trustees, sec. 374, or to "worthy American boys and girls" who promise to repay what they borrow, Owen v. Owens' Executor, 236, 118, 32 S. W. (2d) 731. See Bell County v. Alexander, supra; Paschal v. Acklin, supra; 9 Tex. Jur., sec. 12; Vidal et al v. Girard's Executors, supra. Without further discussion or citation of authority, we hold that, in so far as the purpose to be served is concerned, the trust set up by Mrs. Hofstetter to provide loans "to ambitious and worthy boys and girls, who are financially unable to secure an education and would otherwise be deprived thereof" creates a public charity.

We believe Mrs. Hofstetter's gift, as to each of the four classes named, possesses the common element of all charitable purposes, a design to accomplish objects beneficial to the public generally. Restatement of the Law of Trusts, sec. 368a, p. 1141. Since thereby her property "is employed in its unselfish exercise on behalf of the public, where it eases the burdens of society, and in a measure thereby discharges a duty which the public, on its conscience, owes to unfortunate humanity, and is unrestricted save by the limitation of ability, the charity may be said to be a purely public one." Commonwealth v. Y. M. C. A. 116 Ky. 711, 76 S. W. 522, 105 Am. St. Rep. 234.

■ Having thus concluded that all the four objects enumerated in the will are public charities, we come next to consider whether the trust is invalidated by the first sentence of paragraph 6 of said will reading, "the net income of the public charity fund herein and hereby vested in the trustee herein shall be expended by the trustee *for worthy objects of charity, including the support of the Christian religion as hereinafter indicated.*" (Italics ours.) Plaintiffs contend that this language destroys

the subsequent provisions for public charity, as above discussed, because it carries an authorization to the trustee to spend the income for *any worthy objects of charity that it may select,* thus permitting it to select objects of *private* charity and to spend the money on them rather than on the four objects of public charity named in the will. If this contention be correct the trust is void as being for a charity which in its administration may be either public or private. Allred v. Beggs, 125 Texas 584, 84 S. W. (2d) 223.

In approaching our duty to construe the quoted sentence in its relation to the succeeding language of said paragraph 6 as well as to the other portions of the will we are confronted by a comma, which looms larger in the arguments in this case than it does on the printed page and has threatened to assume much larger proportions than we have concluded to ascribe to it. The plaintiffs contend that by using the comma following "charity" in said sentence, the testatrix meant the concluding phrase, "as hereinafter indicated," to limit *only* the gift for the support of the Christian religion, leaving the trustee free to spend for any other objects it might deem worthy. The defendants urge that the comma was misplaced and that the sentence should be construed as if the comma had been written following "religion" or, if it was not misplaced, another should be inserted following "religion" thereby applying the limitive phrase, "as hereinafter indicated," to the language, "for worthy objects of charity." We do not believe that the use, misuse or nonuse of a comma should be regarded as determinative of the testamentary intent of Mrs. Hofstetter or, indeed, as has been particular significance in that regard. Although it has been said that the courts may insert punctuation when necessary to effectuate the true intent, 3 A. L. R., p. 1068, note IV, and that punctuation may be resorted to for solution of an ambiguity which it has not created, Anderson & Kerr Drilling Co. v. Bruhlmeyer, Com. App., 134 Texas 574, 136 S. W. (2d), 803, 127 A. L. R. 1217, proper punctuation, especially the use of the comma, is so fraught with uncertainty and arbitrariness that its rules cannot be considered so inflexible as to control and determine the meaning of language of which it is, after all, not a part, Empire Ins. Co. v. Cooper, Civ. App., 138 S. W. (2d) 159, so we prefer to say that neither the presence nor the absence of a comma in the quoted sentence either creates ambiguity or removes it from the will, Anderson & Kerr Drilling Co. v. Bruhlmeyer, supra. In other words, we shall take the instrument by its four corners and determine its meaning from

its language and, having ascertained from the arrangement of its words, as the same were employed by Mrs. Hofstetter, what its meaning is, construe it accordingly, without regard to commas or their absence. Only if and after that method fails would we be warranted in resorting to the position of a comma to determine Mrs. Hofstetter's testamentary intent. See 12 Am. Jur., sec. 256, p. 799; 17 C. J. S., sec. 306, p. 723.

In thus taking the will and looking at it from its four corners there is a primary principle of construction that we are definitely obligated to apply, namely, the intention of Mrs. Hofstetter is our first and great object of inquiry and we must not suffer such intention to be defeated merely because she may not have clothed her ideas in technical language, Bell County v. Alexander, supra, because all rules of construction have been worked out by the courts to ascertain such intention and before it all such rules fall, 2 Page's Law of Wills, sec. 916; 44 Tex. Jur., secs. 140, 141, 143; Inglis v. Trustees of the Sailor's Snug Harbor, 3 Pet. 99, 7 L. Ed. 617. In other words,

"There is no hard and fast rule which requires that language, * * be dissected and measured with mathematical precision. It is always permissible, in fact proper, to look beyond mere grammatical form to what might be termed the internal evidence of the writer's intentions."

Neely v. Brogden (Com. App.), 239 S. W., 192. And this cannot be accomplished by considering detached, segregated or isolated words, clauses or sentences. King et al v. Howell (Civ. App.), 120 S. W. (2d) 298.

If the phrase, "as hereinafter indicated," appearing in the first sentence of paragraph 6, was used by Mrs. Hofstetter to limit the gift to the support of the Christian religion, it would seem that all later specifications and limitations would relate to how money arising from the trust should be spent in such support, since, if plaintiffs be correct, she had already turned her trustee loose to spent the trust income for any other worthy cause of charity that might catch its fancy. Yet the very first expression is that some of the money may be spent in the relief of poverty and in utter disregard of the religious belief of the beneficiary, that is, she says emphatically it may be spent on beneficiaries of religious persuasion other than Christian or of no religious persuasion at all, which eventualities certainly could not be construed as in support of the Christian

religion. Furthermore, the subsequent direction that a reasonable amount be paid annually to the Reynold's orphanage, which, as we have already seen, is administered as a non-sectarian institution to relieve the public of part of its burden to care for our orphans, is certainly not a provision primarily in support of the Christian religion. Moreover, the power bestowed upon her trustee to make loans from the trust income in aid of the ambitions of worthy boys and girls to secure an education, however beneficient and commendable, assuredly is not such a provision. Since all four of the specific provisions are for public charity, it follows that if said limitive phrase is to be applied exclusively to the charity for support of the Christian religion as plaintiffs contend, Mrs. Hofstetter did an uterly useless thing in mentioning three of the said class objects of her bounty because she had already provided for them when she directed, in the otherwise all-inclusive words, that the net income of the trust should be expended for worthy objects of charity. It would thus result that all the language relating to objects, other than support of the Christian religion, would have to be rejected or eliminated as surplusage, and the courts are reluctant or unwilling to do that. 2 Page's Law of Wills, sec. 937. Moreover, this would be contrary to the presumption that a testatrix will place nothing superfluous or meaningless in her will but intends "every part, sentence, clause and word to have a meaning and to play a part in the disposition of her property." Lockett et al v. Wood et al (Civ. App.), 84 S. W. (2d) 798, expressly affirmed and approved by the Commission of Appeals in Peden Iron & Steel Co. v. Lockett, 131 Texas 287, 115 S. W. (2d) 405.

■■ If it be conceded that ambiguity exists by reason of the structure of the sentence in question, we believe the same must be resolved in favor of legality. Charities like those specified by Mrs. Hofstetter are held in such high regard by the law that the rules of construction are more liberal to sustain them than they would be if the gifts were to individuals. See Brooker v. Brooker, 130 Texas 27, 106 S. W. (2d) 247; Appendix, 4 Wheat, pp. 9 and 10; note 1; Ingraham v. Ingraham, 169 Ill. 432, 48 N. E. 561, 49 N. E. 320. As said in Jackson v. Phillips, supra:

"When a charitable intent appears on the face of the will, but the terms used are broad enough to allow of the fund being applied either in a lawful or an unlawful manner, the gift will be supported, and its application restrained within the bounds of the law."

More concretely, if one construction of a will causes it to violate the rule against perpetuities while another makes it comply therewith the latter construction will be preferred. 2 Page, Law of Wills, sec. 925, p. 842. "Public Charities are public blessings, and the commonwealth is interested in giving force and effect to them." Commonwealth v. Y. M. C. A., supra. So the court's attitude in considering a bequest intended for a charitable purpose should be friendly, not hostile. Noice v. Schnell et al 101 N. J. Eq. 252, 52 L. R. A. 965, 137 Atl. 582. It should "make every reasonable effort to hold that the trust is purely charitable, and not a mixed charitable and private trust which would be invalid." 2 Bogert, Trusts and Trustees, sec. 369. Therefore, we hold that the phrase "as hereinafter indicated" was used by Mrs. Hofstetter to qualify and limit the power of the trustee to spend the trust income for worthy objects of charity to the same extent as if she had wholly omitted the phrase, "including the support of the Christian religion," and that, therefore, the trust is limited to the four purposes, or classes, specifically enumerated in paragraph 6 immediately following the first sentence and that its income cannot be spent for any other purpose. Any contrary construction would utterly defeat the evident intent of Mrs. Hofstetter that her estate should after her death go to charity rather than to the plaintiffs and her many other kinsfolk. Anderson v. Menefee (Civ. App.), 174 S. W. 904 (er. ref.) ; 38 Texas Digest, key 450, p. 377. It is only when illegal provisions are expressed in clear and unequivocal terms that the courts will strike the will down. 44 Tex. Jur. sec. 203. Awkward sentence structure cannot be given such controlling effect. Ibid., sec. 142; and see Scott v. Logan, 122 Texas 636, 64 S. W. (2d) 141. In Grant v. Saunders, supra, where the trust was "for the benefit of the poor, *and to be given by her to such objects, as in her judgment is worthy of assistance*" (Italics ours), the Supreme Court of Iowa held that the clear effect of the quoted language was to provide for the poor and that the discretion given the trustee to select such objects as are worthy relates *back* to the subject of the bequest. An instructive analogous case wherein a construction was given favorable to the trust is Bullard v. Chandler 149 Mass. 532, 5 L. R. A., 104, 21 N. E. 951. Likewise, the language creating the trust sustained in Paschal v. Acklin, supra, is well worth consideration in this connection.

What we have said disposes, in part, of plaintiffs' contention that the trust is a personal one in the trustee in that it vests

in the trustee a discretion as to the objects, persons or classes to whom gifts shall be made. We are not here called on to decide whether the trust would have been personal in the trustee and void had the power of the trustee to spend "for worthy objects of charity" not been limited to four distinct classes by the subsequent language of paragraph 6, as above pointed out. The beneficiary classes being specified and all of them being charities, the trust is not a personal one in defendant Bank but is one for public charity only.

While the trustee is thus limited by Mrs. Hofstetter's will to the classes of beneficiaries for whom the trust income shall be spent, it is true, as plaintiffs contend, that the selection of the individual beneficiaries in the first and fourth classes (poverty and worthy students) is left to the discretion of the trustee. Still that does not avoid the trust for vagueness or indefiniteness nor does it make the trust a personal one in the trustee. Writers have frequently observed that trustee selection of the beneficiaries out of a designated class is an inherent and necessary characteristic and attribute of a public charity trust. In fact, this might be well said as to the church and orphanage named by Mrs. Hofstetter. While she did direct payments to each of them, she did not know nor could she know which individual members of said church or wards of said orphanage would ultimately be benefited by her beneficience. It has been written that an essential element of a charitable trust is that the individual beneficiaries be indefinite, if the purpose of the bounty and the class of persons to be fienefited de definite. "Charity delights in uncertainty. Trusts for a charitable purpose must be for the benefit of an indefinite number of persons. Indefiniteness is the best means of making the charity effective and beneficial," Thompson, Construction and Interpretation of Wills, sec. 583, p. 746. See 14 C. J. S., secs. 39 and 40. The reason for this rule obviously is the fact that if the individual beneficiaries were designated by the testatrix the trust would not be for a public charity at all but would be for a private charity. Bell County v. Alexander, supra; Paschal v. Acklin, supra. Charity begins where certainty in beneficiaries ends. 5 R. C. L., p. 310. We think the correct rule has been stated as follows:

"Although the courts are not in full accord as to the extent to which they can properly go when the donor has not provided some method by which the ultimate objects of the gift may be determined, probably all American courts, except the few

which take the extreme view adopted in Maryland, agree that where the donor or testator has designated a class by naming the kind of charity, as distinguished from a charity in general, and also has given to a competent trustee the power to select the individuals from the designated class, the trust is valid." Perry on Trusts and Trustees (7th Ed.), sec. 713a.

To argue that the attorney general could not intervene in this case to enforce the trust in the event of misfeasance or nonfeasance of the trustee is but to beg the question. Such right of intervention necessarily attaches to any public charity trust to preserve and protect the same for the very sufficient reason that it serves a public purpose and therefore is accorded public protection, which the law affords by suit filed by the public law enforcement officer, the attorney general, in a court of equity. In the case of any public charity trust it is not only his right but his duty to sue to protect and enforce it wherever proper or necessary. As to a private trust such is neither his duty nor his right. Mrs. Hofstetter's trust is for public charity, hence the attorney general of Texas is under a positive, continuing obligation to protect it by proper court action at any time such may become necessary. This is not on the English theory that he appears as representative of the sovereign as *parens patriae,* but it is a function belonging to his office under the Constitution and laws of the state. Allred v. Beggs, supra; Carroll et al v. City of Beaumont (Civ. App.), 18 S. W. (2d) 813 (er. ref.) ; Troutman v. De Boissiere, etc. Ass'n, supra; 2 Bogert, Trusts and Trustees, sec. 411.

The contention that the direction to the trustee to pay out of the income of the trust a reasonable amount annually for the Church and to the orphanage is so uncertain that the beneficiaries cannot enforce it is without merit. In the first place, the gift to each of said institutions being public charities it is no concern of the plaintiffs as to when the same shall be paid or how much shall be paid. Moreover, should the trustee fail to make payments as directed or should the amounts paid be too small, considering the net income derived from investment of the estate and all other relevant facts and circumstances, the proper courts, to whom the trustee is fully responsible for faithful discharge of its duties, have full authority and power to enforce such payments by judgments in suits properly filed for that purpose. See Hopkins v. Upshur, 20 Texas, 89, 70 Am. Dec. 375; Chambers v. City of St. Louis, 29 Mo., 543; Perry, 2 Trusts and Trustees (6th Ed.), sec. 720.

The plaintiffs' proposition that the powers of the trustee and the beneficiaries of the trust are so uncertain and the discretion of the trustee so unlimited that the trust cannot be administered by a court of equity belittles the broad equity powers of our courts and ignores the fact that public charity trusts are particular favorites of courts of equity, which are quick to protect and enforce them. Gidley v. Lovenberg (Civ. App.), 79 S. W. 831 (er ref.).

The answer to these and similar objections made by plaintiffs to the trust created by Mrs. Hofstetter is that there is, of necessity, a certain extent of indefiniteness inhering in any public charity trust; there is, essentially, a varying degree of discretion vested in the trustee chosen to adminster and execute it and "if it were right for the court to approach in a spirit of criticism and with a view to break down and destroy a will which is pervaded from beginning to end with broad and delicate charity, these criticisms might be upheld." Gidley v. Lovenberg, supra. But, bequests like Mrs. Hofstetter's being favored by our courts, such facts cannot be used to strike down her clearly revealed intention to give her estate to four classes of public charity beneficiaries. Should her trustee need any advice or assistance or any construction of the terms of the will relating to his powers or any direction as to the time and manner of a fair execution of the trust as between the charities named by Mrs. Hofstetter, the proper court in exercise of its ample equity powers can and will give the same. Likewise, if the trustee named passes out of existence for any reason or if it fails or refuses to act, the same court will name another trustee. The trust will not be suffered to lapse for want of a trustee. See Inglish v. Johnson 42 Texas Civ. App. 118, 95 S. W. 558 (er. ref.) ; Grant v. Saunders, supra; 14 C. J. S. sec. 49; 5 R. C. L. sec. 33. After all, a public charity trust having been created by Mrs. Hofstetter, that some difficulties may develop from time to time in its administration is not a matter about which the plaintiffs need concern themselves. Whenever necessary such difficulties will be solved by the proper court in a suit filed by the attorney general, as representative of the State in the exercise of its powers of supervision and visitation for the protection of the public interest.

We have in this case a trustee capable and competent to take the subject-matter of the trust. We have charity objects both legal and definite to be served and benefited by its execution. We have courts possessing broad equity powers ready,

willing and able to take cognizance of and enforce the trust as well as to aid generally in its administration. Therefore, we have a valid public charity trust, to which our rule against perpetuities has no application. We affirm the judgment of the Court of Civil Appeals.

Judgment of the Court of Civil Appeals affirming that of the trial court is affirmed.

Opinion adopted by the Supreme Court March -18, 1942.

Rehearing overruled April 22, 1942.