**CLEVENGER et al. v. RIO FARMS, Inc., et al.**

No. 4496.

Court of Civil Appeals of Texas, Eighth District.

Feb. 13, 1947.

Rehearing Denied March 6, 1947.

Sid L. Hardin, of Edinburg, and Taylor, Cox, Wagner & Adams, of Brownsville, for appellants.

Strickland, Ewers & Wilkins, J. E. Wilkins, and Pat J. Howe, all of Mission, for appellees.

McGILL, Justice.

This is an appeal from an order of the district court of Hidalgo County, 93rd Judicial District, dismissing appellants' cause of action. Appellants, seventeen in number, as plaintiffs for their own benefit and for the benefit of all other low income farmers or farm families living on or adjacent to a tract of 25,000 acres of land situated in Hidalgo and Willacy Counties, and particularly described, sued the Rio Farms, Inc., a private corporation incorporated under Article 1302, Subdivision 2, R.C.S., and the present members of its Board of Directors. The relief sought was a judgment adjudicating each of the plaintiffs to be low income farmers or heads of low income farm families and beneficiaries of the charity being administered by defendants, and requiring defendants to sell to plaintiffs the respective lands they had applied to purchase of defendant, Rio Farms, Inc., at $37.50 per acre, the cost thereof to said defendant, or at such price as to the court might seem fit and proper under all the facts and circumstances; or if it should appear that any one of the plaintiffs should not be entitled to purchase the particular tract of land applied for, that such plaintiff be permitted to purchase some other tract not yet disposed of by defendant, Rio Farms, Inc., on like terms. The court sustained certain exceptions to plaintiffs' petition and upon their refusal to amend, dismissed the suit.

The petition is lengthy. With a trial amendment it comprises 25 pages of the transcript. As showing a purpose for incorporation of defendant, Rio Farms, Inc., other than those stated in its charter, it set forth at length certain provisions of the Emergency Relief Appropriation Act of 1935, 49 Stat. 115, pursuant to which the Resettlement Administration was established for the purpose of carrying out an extensive program of home ownership for farmers and their families in the low income group; Executive Orders of the President organizing the Resettlement Administration showing the same purpose; portions of a report of a Special Committee on Farm Tenancy transmitted to the President on February 13, 1937, in which it was recommended that the name of Resettlement Administration, which had been transferred to the Department of Agriculture, be changed to Farm Security Administration, and wherein it was stated that "Farm home ownership has been approved throughout American history as a primary means of attaining security"; a portion of the President's message of February 16, 1937, transmitting the report of this Special Committee to Congress, in which the policy of the government to assist worthy tenant farmers to become home owners was emphasized; the passage of the Bankhead-Jones Farm Tenant Act, 7 U. S.C.A. § 1000 et seq., as a result of such report, and the change of the name Resettlement Administration to the Farm Security Administration shortly thereafter, and giving to it the functions of carrying out certain provisions of the Bankhead-Jones Farm Tenant Act. It was then alleged that the Farm Security Administration in carrying out its program providing security for low income farm families and individual farmers procured an option on the 25,000 acres of land above referred to, 17,500 acres of which were in cultiva-

tion, 2,000 acres. in citrus orchards, and only a little over 4,000 acres were uncultivated and in brush; that the Farm Security Administration caused the Rio Farms, Inc., to be incorporated (all of the incorporators being agents and employees of Farm Security Administration); that the corporation owned no property, had no capital stock, and that any profits were to be used to further the charitable and benevolent purposes for which it was created, which were stated in its charter to be "To meet the social problems and assist low income farm families and individuals within certain areas within the state of Texas, assisting said families and individuals in obtaining agricultural benefits, marketing and otherwise, and in improving their economic position"; that shortly after the Rio Farms, Inc., was chartered the Farm Security Administration in pursuance of its program of promoting and fostering farm ownership and of otherwise assisting low income farm families and individual farmers, transferred the option which it held on the 25,000 acre tract to Rio Farms, Inc., the consideration being that the Rio Farms, Inc., would carry out the policies and program of Farm Security Administration; that thereafter the Farm Security Administration loaned to Rio Farms, Inc., $1,029,000 to be used for the following purposes only: "For charitable and benevolent purposes and in furtherance of such families and individuals within certain areas within the State of Texas, assisting said families and individuals in obtaining agricultural benefits, marketing and otherwise, and in improving their economic position"; and in which loan agreement it was provided that the Rio Farms, Inc., would conduct and manage its affairs in accordance with policies which the Government would prescribe and deem necessary for its interests; that a supplemental loan of $35,000 was made by the Farm Security Administration in which one of the purposes stated was "to provide assistance to low income farm families located in the land now belonging to the borrower or lands adjacent thereto, as a means toward improving their economic position and in furtherance of the purpose for which the corporation was organized;" and that a second supplemental loan of $202,350 was made for the same purpose as the first supplemental loan and both of the supplemental loan agreements contain provisions that the Rio Farms, Inc., would conduct and manage its affairs in accordance with the policies of the Government; that since the Rio Farms, Inc., was created for the purpose of carrying out the policies of the Farm Security Administration, whose primary purpose was to provide farm home ownership for low income farm families and individuals, the Rio Farms, Inc., became impressed with a public trust, the primary purpose of which was to provide farm ownership for low income farm families and individual farmers, especially those living on any part of the 25,000 acre tract or adjacent thereto; that plaintiffs were living on part of the 25,000 acres or adjacent thereto when Rio Farms, Inc., acquired the property; that before entering into tenancy contracts with Rio Farms, Inc., Sam D. Tayloe, acting as General Manager of Rio Farms, Inc., and as representative of Farm Security Administration represented orally to plaintiffs that if they would farm certain lands of Rio Farms, Inc., (particularly described), that they would be permitted to purchase same at the cost price thereof to the defendant, Rio Farms, Inc., and would be given credit on the purchase price for the rents that the Rio Farms, Inc., collected from them; that they and each of them were farm families and the heads of farm families in the low income group and beneficiaries of the trust being administered by the Rio Farms, Inc.; that they relied upon the Federal Farm Security Administration program as well as the verbal representations of Sam D. Tayloe and the fact that the defendant Rio Farms, Inc., as a charitable corporation charged with the duty of permitting them to purchase the lands that they should go into possession of and farm, and thus relying they did go into possession of such lands and are continuing to farm them in a good and farmerlike manner, clearing them of Johnson grass and brush and making valuable improvements thereon which they would not

have done but for said representations of Tayloe, and the fact that the lands were held in trust by Rio Farms, Inc., to carry out the Federal Farm Security Administration program; that there were many other low income farmers and low income farm families living on the lands of the Rio Farms, Inc., and adjacent thereto, and if they were recognized as beneficiaries of the trust and permitted to purchase a portion of said lands and if the trust were enforced for their benefit it would result in a benefit to the community in that vicinity as a whole. They alleged that they had made application to the present Board of Directors of the Rio Farms, Inc., to purchase the lands they had been farming, at the cost price to it, or at such price as might appear reasonable and just, requesting credits for the rents they had paid, and had requested an opportunity to be heard, but that the Directors ignored and refused their applications without giving them an opportunity to be heard; that in so doing the Directors were biased and prejudiced and abused any discretion they might have had in selecting beneficiaries of the trust; that the prior Board of Directors of the Rio Farms, Inc., which had been removed had used the property entirely to engage in business for profit and had netted a profit during operations in 1944 and 1945 of $1,092,064.93; that the book value of Rio Farms, Inc., property on August 31, 1945, was approximately $2,295,631.58, though its actual value was more than five million dollars; that the present Board of Directors shows a fixed, determined purpose to administer the trust for profit, as the prior Board had done, and not for the benefit of low income farmers and farm families in the area of said lands or adjacent thereto.

The defendants' special exceptions which the court sustained challenged the right of plaintiffs to maintain the suit for their own personal benefit and invoked the Statute of·Frauds against any contract arising out of the alleged representations of Tayloe. Appellants' points challenge the holding that they as beneficiaries of the trust had no right in equity to have the trust enforced for their benefit and that they as beneficiaries were not entitled to review the arbitrary action of the Board of Directors in refusing their applications to purchase part of the land of Rio Farms, Inc., held in trust for their benefit and the benefit of other low income farmers living on the land or adjacent thereto; also the holding that the Statute of Frauds was applicable to their cause of action.

All parties are agreed that the petition sufficiently alleges the creation of a charitable or public trust. This is unquestionably so. The terms "charitable trust" and "public trust" are synonymous. Boyd v. Frost Nat. Bank, Tex.Sup., 196 S.W.2d 497, loc. cit. 503, 504, quoting 2 Bogert, Trust & Trustees, Sec. 362, p. 1099 (Sup.Ct.). Id., Tex.Civ.App., 188 S.W.2d 199, loc. cit. 207. The distinguishing feature between such trusts and private trusts is apparent from the following quotation from the opinion of Mr. Justice Greenwood in City of Houston v. Scottish Rite Benevolent Ass'n, 111 Tex. 191, 230 S.W. 978-981, quoted in Powers v. First National Bank of Corsicana, 138 Tex. 604, 161 S.W. 2d 273, loc. cit. 280: "Charity need not be universal to be public. It is public when it affects all the people of a community or state, by assuming, to a material extent, that which otherwise might become the obligation or duty of the community or state. * * * It is to lose sight of the actual results not to see the public benefit in reasonable provision for the needs of large and indefinite groups of individuals, no matter what may have been the basis,. if lawful, on which the groups were formed." See also Restatement of Law of Trusts, Vol. 2, p. 1144, Sec. 369-g.

The very purposes for which the defendant Rio Farms, Inc., was incorporated, as expressed in its charter, are alleged to be charitable and benevolent purposes, and it is also alleged that if all the low income farmers and farm families living on the lands of Rio Farms, Inc., or adjacent thereto are recognized as beneficiaries of the trust, the community as a whole would benefit thereby.

The petition fails to show that the Board of Directors of Rio Farms, Inc., in the faithful administration of the trust were obligated to sell any land to appel-

lants. It is nowhere alleged that the Farm Security Administration in the transfer of the option to purchase or in any of the loan agreements imposed any such duty upon the Rio Farms, Inc. The fact that the principal purpose of the Farm Security Administration in carrying out its program was to foster home ownership for low income farmers and farm families and that the Rio Farms, Inc., was chartered to carry out its program and the loans made to it for this purpose imposed no such obligation. In the absence of an express stipulation it will be assumed that all land acquired by the Rio Farms, Inc., is held by it for the charitable and benevolent purposes expressed in its charter. It may be conceded that one way to accomplish those purposes would be by sale of the land to appellants. It does not follow that such sale is the only means by which such purposes may be accomplished and that the trustees have no discretion in the matter. It is possible that beneficiaries of the trust would obtain greater agricultural benefits by renting the land at low rental than by purchasing it; that by operation of the cultivated and improved land for profit the trustees would thereby be enabled to furnish seed and equipment to the beneficiaries, to aid them in clearing and cultivating the uncultivated and unimproved land as tenants at a profit, and thereby reap greater agricultural benefits therefrom than by ownership thereof—in other words, the manner of administration of the trust so as to best accomplish its purposes was a matter within the sound discretion of the trustees, and the court was without power to substitute its judgment for theirs and hold that the purposes of the trust would be best subserved by sale of the land. Furthermore, "an essential element of a charitable trust is that the individual beneficiaries be indefinite, if the purpose of the bounty and the class of persons to be benefited be definite." Powers v. First Nat. Bank of Corsicana, supra, 161 S.W.2d 283, par. 32, 33. Here the class to be benefited is low income farmers or farm families living on the 25,000 acre tract or adjacent thereto. The allegations to the effect that appellants possess the qualifications of the class eligible to receive benefits are insuf-

ficient to constitute them beneficiaries of the trust ipso facto, or to entitle them to enforce it. Restatement of the Law of Trusts, Vol. 11, Sec. 391, p. 1183 et seq. While we consider such allegations as facts in reviewing the trial court's ruling sustaining special exceptions it was within the province of the trustees in the first instance to determine their truth or falsity. Of necessity, in order to administer the trust it was necessary that individual beneficiaries be selected from the class; otherwise no specific benefit could be conferred on any one. The power and duty to administer the trust was vested in the Board of Directors. This carried with it the incidental power to select the individual beneficiaries. 10 Am.Jur. Sec. 94, p. 652, quoted in Frost Nat. Bank v. Boyd, supra, Tex.Civ.App., 188 S.W.2d loc. cit. 203, 2nd col. Appellants recognized that it was necessary that individual beneficiaries be selected before the trust could be administered, by seeking to have an adjudication that they were such beneficiaries. They sought to have the court, rather than the Board of Directors, make the selection. Of course the court could not do this. If the Board of Directors failed to perform their duty in this respect they might be removed and other Directors who would perform it be appointed, but the court could not take from the Directors, who were the trustees, the power to make the selection which was vested in them, and exercise it for them.

■ The contention that the selection was made by the Board of Directors through the representations of Tayloe and the reliance of appellants thereon is entirely without merit. It is not alleged that such representations were authorized by the Board of Directors. Apart from the Statute of Frauds, since the power and duty to administer the trust was vested in the Board of Directors as trustees, Tayloe could not make any valid agreement for sale of trust property without their authorization.

■ One of the grounds on which the court based his judgment sustaining the exceptions was that appellants could not enforce the trust for their own personal

benefit. On this point the court cites Scott on Trusts, Vol. 3, Sec. 391, and Bogert on Trusts and Trustees, Vol. 2, Sec. 414. These authorities are not available to us. The court's quotation from Scott is: "The mere fact that a person may in the discretion of the Trustee become a recipient of a benefit under the trust does not entitle him to maintain a suit for the enforcement of the trust." And from Bogert: "As a general rule no individual private citizen can sue to enforce a charitable trust merely on the ground that he believes he is within the class to be benefited by the trust and will receive religious, educational, eleemosynary or other like benefits from the operation of the trust." These quotations support what we have said regarding appellants' contention that the allegations of their petition were sufficient to show that they were beneficiaries of the trust.

It is unnecessary to comment on the point that the trustees abused their discretion and denied appellants' applications to purchase the land without a hearing, since from what we have said appellants allege no right to purchase the land at all; likewise it is unnecessary to discuss the application of the Statute of Frauds since apart from such Statute no right to purchase is shown.

The judgment is affirmed.

On Appellants' Motion for Rehearing.

We have again read and carefully considered plaintiffs' First Supplemental Petition. We reproduce the pertinent portion thereof: "If Sam D. Tayloe had not in fact been duly authorized by the Board of Directors of the Defendant Rio Farms, Inc., to make the representations to these Plaintiffs and the agreements as alleged by Plaintiffs in their Second Amended Original Petition, then these Plaintiffs say that the respective Boards of Directors of said Rio Farms, Inc., which were in office when said representations and agreements were made by said Sam D. Tayloe to and with Plaintiffs and the other low-income farmers on whose behalf this suit is brought held said Sam D. Tayloe out as having the authority to make such representations and agreements and said Boards of Directors, and each and every member thereof, had knowledge of such representations and agreements and said Boards of Directors, and each and every member thereof, had knowledge of such representations and agreements, and agreed to the making of such representations and agreements by said Sam D. Tayloe, and acquiesced in, ratified and confirmed the same, and accepted the benefits thereof for and on behalf of said Rio Farms, Inc., and these Plaintiffs and said other low-income farmers on whose behalf this suit is brought relied upon said representations and agreements, and changed their positions in reliance thereon, and the Board of Directors that this Honorable Court removed from Rio Farms, Inc., each and all had knowledge of said representations and agreements made by Sam D. Tayloe, acting as the General Manager of Rio Farms, Inc., and each and all of said old Board Members knew that these Plaintiffs, and each of them, had gone into possession of their respective farms, have been farming them, each improving his said farm as alleged by Plaintiffs in their Second Amended Original Petition, and they paid the rents to the said Defendant Rio Farms, Inc., and the Rio Farms, Inc., has received the benefits of said agreements between Sam D. Tayloe, acting as General Manager of Rio Farms, Inc., of each of these Plaintiffs' labor and time and improvements that they each have put on their respective farms for over the period of years as shown in Plaintiff's Second Amended Original Petition; and it is now inequitable for the Defendant Rio Farms, Inc., acting through its new Board of Directors, to raise the point that Sam D. Tayloe was without authority to make said agreements and representations to these Plaintiffs, and each of them, and the mouth of each member of said Board and the Defendant Rio Farms, Inc., should be closed and estopped to assert or claim that Sam D. Tayloe did not have actual authority to make said representations and agreements to and with these Plaintiffs, and each of them."

We adhere to the statement in our original opinion to the effect that it is not al-

leged that the representations of Tayloe were authorized by the Board of Directors. Obviously the allegations that "said Boards of Directors and each and every member thereof had knowledge of such representations and agreements * * * and agreed to the makings of such representations and agreements by said Sam D. Tayloe and acquiesced in and ratified and confirmed the same * * *" do not allege Tayloe's authorization by the Boards to make the representations but acquiescence in and ratification thereof after such representations were made by the individual members of the Boards. If such allegations could be construed to allege specifically that Tayloe was authorized by the Boards to make the representations on which appellants rely to establish their selection as beneficiaries of the trust, they are nevertheless insufficient for this purpose. The trustee of a charitable trust, charged with the duty of administering the trust and having the implied incidental power to select the beneficiaries thereunder, cannot delegate such power of selection to any one. Of course, a corporate trustee can exercise discretionary power only through its proper officers, in this case the Board of Directors of Rio Farms, Inc. Restatement of the Law of Trusts, Vol. 1, p. 443, Sec. 171 (e). "A trustee cannot properly delegate authority to do acts which a person of ordinary prudence would not in like circumstances in the management of his own affairs employ an agent to do." Id. (d). Ordinarily he cannot properly appoint an agent to sell, lease, or improve the trust property, Id. (g); and one of the duties of a trustee of a charitable trust is "not to delegate to others the doing of acts which they can reasonably be required personally to perform." Id. Vol. 2, p. 1173, Sec. 379 (a). Certainly the act of selection of beneficiaries is one which such trustee can reasonably be required personally to perform. In this case such act is the very essence of the administration of the trust. As stated in our original opinion, without such selection no specific benefit could be conferred on any one.

 Since the directors were without power to delegate their authority to select the beneficiaries, and appellants, like every other litigant, are charged with knowledge of the law, and of such lack of authority, there can be no estoppel against the Directors and the Rio Farms, Inc., to deny such authority (See 31 C.J.S., Estoppel, § 67, p. 257); and since the Directors could not delegate such authority in the first instance, they could not ratify it. This seems elementary. Appellants failed to allege any facts showing that they had been selected as beneficiaries of the charitable trust admittedly created. Therefore, they cannot enforce the alleged contracts to sell certain of the trust property to them, evidenced by the alleged representations of Tayloe and the alleged estoppel of Rio Farms, Inc., and its Boards of Directors to deny such representations and the alleged ratification thereof by each member of the Boards of Directors of Rio Farms, Inc.

The motion for rehearing is overruled.